FEDERAL REPORTER.

NATIONAL BANK OF THE REPUBLIC, OF NEW YORK, *v.* CITY OF ST.
JOSEPH.

(*Circuit Court, S. D. New York.* June 20, 1887.)

1. MUNICIPAL CORPORATIONS—POWER TO ISSUE BONDS—NOTICE TO PURCHASER.
    The power of a municipal corporation to issue coupon bonds is derived
    from the législative authority of the state, and the laws conferring such power
    form a part of the bonds themselves. Accordingly every person dealing with
    such corporation must, at his peril, take notice of the existence and terms of
    the law by which it is claimed the power to issue such bonds is conferred.
2. SAME.
    The charter of the defendant, a municipal corporation, empowered it to
    give interest-bearing coupon bonds, payable at any length of time agreed
    upon, to any creditor agreeing to receive the same, etc., "provided that noth-
    ing herein shall be so construed as to prevent the mayor and councilmen from
    calling in and paying off, at any time they may deem proper, the whole or
    any part of said bonds; and if the principal of any such bonds, or any part
    thereof, shall be tendered to the holders of the same, and they shall neglect
    or refuse to receive it, all interest shall cease on the sum so tendered from
    the date of said tender." *Held*, that a tender of payment of the principal of
    bonds dated July 1, 1871, payable 20 years after date, and bearing 10 per cent.
    interest, payable on the first days of July and January, duly made prior to
    July 1, 1886, was a defense to an action on interest coupons, maturing Janu-
    ary 1, 1887, brought by a transferee thereof.

At Law.
*N. B. Sanborn*, for plaintiff.
*Ramey & Brown* and *Dillon & Swayne*, for defendants.

WALLACE, J    This action has been tried before the court, a trial by
jury having been waived. By stipulation, the question for determina-
tion is whether the facts set up in the answer are a defense. The ac-
tion is upon certain interest coupons from bonds issued by defendant,
a municipal corporation of Missouri, to the St. Joseph Bridge Building
Company, in payment of a subscription by the defendant for the capi-
tal stock of that company. The bonds are dated July 1, 1871, and are
payable to the St. Joseph Bridge Building Company or bearer, 20 years
after date, at the National Bank of Commerce, in the city of New York,
with interest at the rate of 10 per centum per annum, payable semi-an-
nually at said bank on the first days of January and July of each year,
upon the presentation of interest coupons. The action is founded on
the January coupons of 1887. The defense made by the answer is that
the defendant had a right to call in and pay the bonds before maturity,
and at any time, pursuant to the statutes under which they were issued;
and that, in the exercise of that right prior to July 1, 1886, the defend-
ant paid the whole amount of principal, together with the interest which
would accrue upon the bonds to that date, at the place of payment des-
ignated in the bonds.

The holders of the bonds and coupons have refused to receive the
money thus paid, or to surrender the obligation. By reason of this
tender, interest ceased to accrue on the bonds on the first day of July,

1886, if the defendant had the right to pay them off. Hence the question to be determined is whether the bonds were subject to the defendant's option to pay them before maturity. The bonds were issued pursuant to the authority conferred upon the defendant by an act of the general assembly of Missouri of March 3, 1855, as amended by the act of March 24, 1870. These are acts to amend the charter of the defendant. The act of 1870 has no bearing upon the present question, and need not be referred to. The case turns upon the meaning and effect of three sections of the defendant's charter, conferring power upon the mayor and councilmen, which read as follows:

"Sec. 2. To provide for giving to any person to whom the city may be indebted, and who may agree to receive the same, the bonds of the city, payable in any length of time, and bearing any rate of interest, not exceeding ten per cent. per annum, that may be agreed upon.

"Sec. 3. It shall be the duty of said mayor and councilmen to provide for the prompt annual payment of the interest upon all bonds issued by the city, and for this purpose they shall, by ordinance, set apart enough of the annual revenue of the city to meet said interest, or they may, in lieu thereof, levy and collect a special annual tax upon the real and personal property within the city, not exceeding one per cent. upon the assessed value thereof, which shall be applied exclusively to the payment of said interest, and in liquidation of the city debt: provided, that nothing herein shall be so construed as to prevent said mayor and councilmen from calling in and paying off, at any time they may deem proper, the whole or any part of said bonds; and if the principal of any such bonds, or any part thereof, shall be tendered to the holders of the same, and they shall neglect or refuse to receive it, all interest shall cease on the sum so tendered from the date of said tender.

"Sec. 4. The mayor and councilmen shall have power to subscribe for the capital stock of railroads terminating at or near said city, or for the stock of any other improvements tending to promote the general interest and property of the city; to issue the bonds of the city for said subscription, and provide, by special tax or otherwise, for the payment of the calls due on said stocks, and interest due on said bonds, and the payment of said bonds when due: provided, the proposition to subscribe for such stock, specifying the nature, amount, and terms of said subscription, and the manner in which the same is to be met and liquidated, by special tax or otherwise, be first submitted to a vote of the owners of real estate in said city, and shall have received the sanction of a majority of the owners of such real estate, who alone shall be entitled to vote on such proposition: and provided, further, that the special tax authorized in this section, and in section third of this act, shall never jointly exceed one per cent. upon the assessed value of the property in said city."

The proposition seems almost too plain to require discussion that it is the intention of section 3, evinced in plain and explicit language, to empower the mayor and councilmen to call in and pay off, whenever they may deem it proper to do so, the whole or any part of the bonded indebtedness of the city. The exercise of the power, though permissive merely in its terms, is a duty which these officers are bound to fulfill. *Mayor*, *etc.*, v. *Furze*, 3 Hill, 612; *Supervisors* v. *U. S.*, 4 Wall. 435. It is a power given to them as a trust, to be held and exercised for the benefit of the public, from time to time as occasion requires, and cannot be effectually abridged by their own acts. Dill. Mun. Corp. §§ 61, 62.

The provision which declares that interest shall cease if the holders of the bonds refuse to receive the principal when tendered, demonstrates unmistakably that the legislature intended to ingraft the option upon the bonds, and place it beyond the power of the municipal authorities to bind their successors in office by a different contract.

There is no qualifying language in the section which limits the operation of the proviso to bonds issued under section 2, but the proviso applies unequivocally to "all bonds issued by the city." These words describe, necessarily, not only the bonds created for general purposes under section 2, but also those created for special objects under section 4. Upon the general principles of the interpretation of statutes, where the words are general, the courts are not at liberty to insert limitations not called for by the sense, or the objects, or the mischiefs of the enactment. *U. S.* v. *Coombs,* 12 Pet. 72. It is to be observed that the three sections cover the whole subject of municipal power and duty in respect to creating and discharging bonded indebtedness. Section 2 confers. plenary power upon the mayor and councilmen to create bonds for any debt contracted within the scope of the municipal authority. Section 4 confers power upon these officers to create bonds for certain specified extramunicipal objects, when sanctioned in advance by a vote of taxpayers. Section 3 devolves upon these officers the duty of providing, by special taxation or otherwise, for the payment of the annual interest on the whole bonded debt, authorizes them to call in and pay off the principal or any part of it at any time, restricts them from levying taxes beyond a fixed annual limit, and prevents them from abridging the right of their successors to call in and pay bonds before maturity, by depriving the bondholders of interest after a tender of the principal. This section is declaratory of the policy of the legislature upon all these subjects, and defines the duties and powers of the mayor and councilmen concerning "all bonds issued by the city." Explicit provisions in a statute, comprehending in terms a whole class of cases, are not to be restrained by applying to those cases an implication drawn from subsequent words, unless that implication is very clear, necessary, and irresistible. *Faw* v. *Marsteller,* 2 Cranch, 10.

Section 4 is ancillary and subordinate to sections 2 and 3. It is intended to confer an authority which is never implied, which can only exist by express legislative sanction, and which, when granted, is invariably guarded by limitations and conditions calculated to check abuses in its exercise. No reason has been suggested, and none can be conceived, why the legislature should intend to clothe bonds issued under such an authority with special privileges. Certainly no such intention can be implied when this would be inconsistent with the scheme of municipal duty in respect to bonded debts generally. That section 4 is intended to be subordinate to section 3 is shown by the proviso, which requires that the special tax authorized for the payment of the interest and principal of the bonds shall be included in the limitation of the third section respecting a special annual tax.

If section 4 had preceded section 3 in the order of arrangement of

the several sections, or if sections 2 and 4 had been transposed, there would be nothing in the language of either section upon which to hinge a doubt. The order of arrangement of the various sections of a legislative act is never, independently of other circumstances, worthy of consideration in interpretation. The contention of the plaintiff is built wholly upon the words of section 4, which confer power upon the mayor and councilmen to issue bonds for subscriptions, and provide for the payment of the interest, "and the payment of the principal of said bonds when due." The argument is that, because the mayor and councilmen are to provide for the payment of the principal of these bonds "when due," they are impliedly prohibited from doing so before the bonds fall due. But the injunction to provide for the payment of the bonds when due does not forbid the exercise of the right to pay them before they fall due; much less is it inconsistent with the duty to pay them when the public interests require this to be done. Certainly the language of the fourth section no more evinces the intention of the legislature to permit the mayor and councilmen to bind the city by issuing bonds which cannot be retired before the principal becomes due than that does of the second section, which authorizes them to issue bonds "payable in any length of time." Both sections permit them to issue bonds which will not mature before a fixed date, but neither permits them to abridge or impair the right created for the protection of the city by the proviso of section 3.

Although the plaintiff is a holder for value, and before maturity, of the coupons in suit, the defense asserted must prevail. A municipal corporation cannot, without legislative authority, issue bonds in aid of any extraneous object. Every person dealing with such corporation must, at his peril, take notice of the existence and terms of the law by which it is claimed the power to issue such bonds is concerned. The power to issue such bonds is derived exclusively from the legislative authority of the state, and the laws which confer them enter into and form a part of the bonds themselves, as much so as if they were expressly referred to or incorporated in the bonds themselves. The holder of a municipal bond is chargeable with notice of the statutory provisions under which it was issued. *Anthony* v. *Jasper Co.*, 101 U. S. 693, 697; *Ogden* v. *Daviess Co.*, 102 U. S. 634; *Northern Bank* v. *Porter Tp.*, 110 U. S. 608, 618, 4 Sup. Ct. Rep. 254. By the terms of the statutory authority it was a condition of the present bonds that interest should cease upon a tender of the principal by the defendant at any time. As has been said, it was beyond the power of the mayor and councilmen to curtail or impair the effect of this condition by issuing bonds of a different tenor. It follows that judgment must be directed for the defendant.