HARVEY BAUERNFEIND, Respondent, v. R. A. NESTOS, Governor of the State of North Dakota, Sveinbjorn Johnson, Attorney General of State of North Dakota and Joseph Kitchen, Commissioner of Agriculture and Labor of the State of North Dakota, and as such constituting the Industrial Commission of the State of North Dakota and G. A. Fraser, Adjutant General of the State of North Dakota, Appellants.

(189 N. W. 506)

Where a returned soldiers' compensation act provides for the payment of $25.00 per month for each month of engaged service in the war, to a resident returned soldier, in the order in which the claims are received, filed, and approved, out of a special fund created by the levy of a direct tax annually,

And, where the Adjutant General, under the supervision and direction of the Industrial Commission, is granted the statutory authority, in his discretion, to give priority to claims,

And, where, in an attempt to expedite the present payment the claims that may be deferred for several years by reason of insufficient funds, the Industrial Commission and the Adjutant General have ordered or consented to a contract with certain investment companies which proposes to discount all soldiers' claims 18% by an arrangement through which the Commission purchases all soldiers' claims at 82% of their face and issues notes therefor to the investment companies which, in turn, furnish the equivalent in cash less 3% commission, and binds the Adjutant General and the Industrial Commission to give priority to all such purchased claims and not make any other contract with any one else concerning the same,

It is *held*, in an action to restrain the making of such contract, viz:—

**Bounties — returned soldiers' fund a public fund.**

1.  The Returned Soldiers' Fund is a public fund: The moneys therein public moneys.

**Bounties — industrial commission not empowered to make contract as to exercise of discretion, with respect to priority of claims for returned soldiers' compensation.**

2.  The Industrial Commission has no authority, to bargain by contract, their statutory discretion so as to legally bind its further exercise by them or their successors, or so as to inhibit the control of the legislature thereover.

**States — industrial commission not empowered to make loan or pledge state's credit for purpose of obtaining money with which to pay off returned soldiers' claims.**

3. So far as such proposed contract may be considered a loan, or the pledging of the state's credit, the Industrial Commission have no power so to do.

Opinion filed July 7, 1922.

Action of injunction in District court, Burleigh county, *Nuessle, J.* The defendants have appealed from an order overruling a demurrer to the complaint.

Affirmed.

*Sveinbjorn Johnson,* Attorney General, for appellants.

The payment of a bonus or pension for past services in time of war showing appreciation by the people of sacrifices made in the public interest, has by an almost unbroken line of authority been held to promote the general welfare, and to be for a public purpose. People v. Westchester Nat. Bank 15 A. L. R. 1344, 132 N. E. 241, 231 N. Y. 465; Hill v. Roberts, 217 S. W. 826, (Tenn.) ; Gustafson v. Rhinow, 175 N. W. 903, (Minn.) ; State v. Clausen, 194 Pac. 793, (Wash.)

The fact that the legislature has recognized this to be a public purpose, is entitled to great weight and is ordinary conclusive as far as the courts are concerned. People v. Westchester National Bank, supra; Green v. Fraser, 176 N. W. 11; 40 S. Ct. 499.

*Sullivan, Hanley & Sullivan,* for respondent.

The so-called returned soldier's act is on its face an act passed for special purpose to provide for a gratuity for a special class with a public taxation placed upon all of the property of this state for the use and benefit only of such class. People v. Westchester Bank (N. Y.) 132 N. E. 241.

*Statement.*

BRONSON, J. The plaintiff, a taxpayer, seeks to restrain the Industrial Commission and the adjutant general from entering into a certain contract concerning the soldiers' compensation. The trial court overruled a demurrer to the complaint. The defendants have appealed from the order.

The facts admitted by the demurrer and alleged in the complaint are as follows: The Industrial Commission made a resolution and order which recited that there were a large number of certificates issued to returned soldiers which, pursuant to the tax levied therefor, would not be paid for several years; that there was no market for the sale of such certificates for the reason that they bore no interest, and the date of their maturity was uncertain; that the Commission had made negotiations with various investment companies so as to thereby procure for the holders of the certificates a price approximating the face value thereof, and so that all holders might be placed on the same basis of value thereof without regard to date of filing or approval of claims. This resolution ordered the members of the Commission to execute a proposed contract attached, if accepted by the investment companies.

This contract, in its essential principles, provides: The Industrial Commission agrees to purchase all soldiers' certificates issued to the amount of $6,500,000, the estimated amount outstanding or thereafter to be issued, which may be offered to it by the holder thereof on or before November 15, 1922, for the cash price of 82 per cent. of the face value thereof. The moneys to be paid therefor are to be received from certain investment companies, named as parties in the contract, in exchange for notes issued by the Industrial Commission. The Industrial Commission agrees to issue its negotiable coupon notes upon payment by the investment companies of the purchase price which it is agreed shall be 97 per cent. of the aggregate principal sum of such notes, plus accrued interest to the date of delivery. The investment companies agree to purchase and pay for such notes. It is provided, however, that the investment companies shall not be required to purchase such notes unless soldiers' certificates had been previously purchased and deposited as collateral by the Commission in an aggregate amount sufficient to pay the principal and interest of such notes and unless such notes are tendered by the Commission before November 5, 1922. It is further agreed that each of the notes shall be dated July 1, 1922, and shall be for the sum of $1,000 or a multiple thereof, and shall bear interest at 6 per cent. per annum, payable semi-annually. $250,000 principal shall mature on the 1st day of April, May, and December, 1923, and January, 1924, and $250,000 principal thereafter on such days. They are made payable at the offices of the Empire Trust Company in New York City. It is also agreed that all soldiers' certificates purchased by the Commission shall be deposited with

the Minnesota Loan & Trust Company of Minneapolis, and the First National Bank of Bismarck, who, as trustees, shall hold the same as collateral security for the payment of the notes. The adjutant general, a party to the contract, the Industrial Commission giving consent, agrees that he will give priority to all soldiers' certificates purchased by the Commission and will cause to be paid such certificates in their order as so purchased by the Commission before any other certificates now or hereafter issued excepting certificates now outstanding that will be regularly reached March 1, 1923. Such will be governed by the plan now in operation excepting that any such certificate holders may sell the same to the Commission. The adjutant general and the Industrial Commission agree that they will make no similar contract or arrangement, during the term of such agreement, with any other party, and that no notes or obligations of the Commission secured by such soldiers' certificates shall be sold, issued, or delivered to any other person whatever. The form of the proposed notes is attached; likewise the form of the certificate to be executed by the joint trustees. The order and resolution of the Commission further provides that these notes and the interest thereon shall be paid at maturity, in accordance with the terms of the proposed contract from funds received by the State Treasurer out of the taxes heretofore or hereafter levied for the returned soldiers' fund. In respect to these proceedings of the adjutant general and the Commission, it is alleged that they had no authority to enter into such contract, to purchase such soldiers' certificates, to deliver the notes mentioned, or to deposit the soldiers' certificates with the trustees; that the Commission has no authority, in law, to require the adjutant general to perform the acts specified in the contract; that the adjutant general has no authority to fix the order of payment of such soldiers' certificates; that the Commission has no authority to borrow money for the uses and purposes named in the contract. It is further alleged that the soldiers' certificates are not valid obligations of the state; that the state is not obligated to continue the levy of the tax to pay such certificates; that there is no authority, in law, to obligate the state to continue the levy and collection of the tax provided; and, that the laws providing for such fund are unconstitutional.

## Contentions

The defendants maintain that the soldiers' bonus law is constitutional and its purpose public. They maintain that the Industrial Commission

as created by law, is a business board to whom has been granted, by law, a wide discretion; that in the management of the utilities, industries, and projects of the state the members were given the powers of a board of directors thereover and such powers as might be expedient in conducting any business intrusted to their management. They urge that, concerning the proposed contract and notes, the Commission in reality does not purchase soldiers' certificates. The Commission simply accepts, by assignment, the legal title for the sole purpose of holding such certificates in trust for the assignors until the investment company has paid a stipulated price; that the Commission does not borrow money to pay such certificates; it does not pay them; it simply acts as a trustee for the beneficiaries of the soldiers' act; that in fact, the Commission does not agree to pay the notes excepting as they shall be paid out of the bonus fund; that in reality it is a trustee of two *cestuis que* trust holding the legal title for the beneficiaries as trustee only; that the Commission, accordingly, may act as trustee, has authority so to do, and following the decision of this court in State ex rel. Bauer v. Nestos, (N. D.) 187 N. W. 233, it may, as such trustee, assist the adjutant general in carrying out the law; that, in any event, if the position be taken that the proposed contract amounts to a purchase by the Commission, it has that power; that, as a business board, it has all discretion necessary to carry out the supervisory powers granted to it; that under the home builders law it may purchase soldiers' certificates if it becomes necessary in order to facilitate the acquisition of farm homes by returned soldiers.

The plaintiff urges that the act is unconstitutional because violative of constitutional provisions concerning special privileges and immunities and because the taxes levied are not for a public purpose; that the Industrial Commission and the adjutant general have been granted no legislative authority to make the contract proposed; that the Commission and the adjutant general have no power, by contract, to bargain away the discretion awarded to them concerning the priority or manner of paying soldiers' certificates.

### Decision.

Chap. 206, Laws of 1919, first established a returned soldiers' fund. It provided for the levy of one-half mill per dollar upon the assessed valuation of all taxable property. Its stated purpose was to enable returned soldiers to secure a home or a farm home or to complete their

education. It entitled any returned soldier, a resident of the state, to receive $25 per month for each month of engaged service, for the purpose of purchasing a home or farm home, or, in lieu thereof, to pursue or complete his educational training. It directed the adjutant general to make payment from the fund annually to such returned soldiers pro rata out of any funds available. It gave power to the adjutant general, under the supervision of the Industrial Commission, to have charge and supervision of all such payments.

Chap. 55 of the Laws of the Special Session of 1919 amended the prior act. It provided for a levy of three-fourths of one mill and the creation of a special returned soldiers' fund to be used for the following purposes:

"(a) To secure a home or a farm home and improve, furnish or repair same; (b) To make payments on pre-existing indebtedness on such home or farm home or on any improvements or furniture connected therewith; (c) To procure farm machinery, seed grain, live stock, poultry and feed for same, and to pay off any pre-existing liens or mortgages against same; (d) To establish, or invest in, a business or trade, including the tools of a craftsman or to pay off any pre-existing indebtedness, mortgage, or liens against same; (e) To complete or procure an education in any approved educational institution, including correspondence schools; (f) To secure medical care or treatment and surgical services." Section 1.

It provides that any returned soldier should be entitled to receive $25 per month for each month of engaged service; that payments should be made in one payment from such fund to such returned soldier in the order in which their applications were received, filed, and approved, on vouchers issued by the adjutant general and approved by the State Auditor. It provided further that the adjutant general, with the consent of the Industrial Commission, might, in his discretion, give priority to claims under the act.

Chap. 103, Laws of 1921, further amended the prior acts. It increased the levy to one mill. It provided that any returned soldier should be entitled to receive from the fund $25 per month for each month of engaged service; that payment should be made in one payment from such fund in the order in which applications were received, filed, and approved out of any funds available therefor. It provided further that the adjutant general, with the consent of the Industrial Commission,

might, in his discretion, give priority to claims under the act. It empowered the adjutant general, under the supervision of the Industrial Commission, to have charge and supervision of all payments and the carrying out of the act. It provided that the compensation paid should be used within the state of North Dakota only, unless the adjutant, under direction and consent of the Industrial Commission, should otherwise direct.

The returned soldiers' fund is a public fund. The moneys therein are public moneys. They are collected directly by taxation. Necessarily, if the law be constitutional, they are so collected for a public purpose. The legislature has prescribed a method for disbursing such fund to returned soldiers. This method requires the full payment to a returned soldier in the order in which the applications are received, filed, and approved, and that the compensation paid shall be used within the state of North Dakota only. The exceptions are that the adjutant general, with the consent of the Industrial Commission, may, in his discretion, give priority to claims, and, further, that the adjutant general, under the direction and consent of the Industrial Commission, may otherwise direct the use of the compensation paid without the state.

The legislature has given a discretionary power to the adjutant general subject to the direction and supervision of the Industrial Commission.

If, as the defendants contend, the proposed contract is not to be construed as a loan or borrowing of money, and not thereby in any manner, to bind the state and use its credit, then such proposed contract is to be given the same construction as if the adjutant general and the Industrial Commission had agreed by contract to give priority to all claims purchased by the investment companies at 82 per cent. of their face value. Such contract does and would, in its essence, bargain away the right of the Industrial Commission to exercise its discretion concerning the priority of claims, not only for the present, but for the future. Such a contract, if valid, would automatically deprive the adjutant general and the Commission of the very discretion that the legislature had granted. For, concerning all claims not purchased by the investment companies, the discretionary right conferred by statute would be taken away. Furthermore, such contract, if valid, would be directly opposed to the statutory requirement that payments shall be made from the fund in the order in which the applications are received, filed, and approved. It would reverse the statute and deprive the officers charged with the administra-

tion of the fund of all discretion not only the officers for the present, but the officers for the future. Indeed, such a contract would permit public officers to disburse a public fund pursuant to the bargain of their contract, with their sovereign discretionary power eliminated for the present and for the future.

Manifestly this discretionary power, conferred by statute, is a continuing discretionary power. It is a sovereign delegated power termed quasi judicial. Throop on Public Officers, §§ 533, 553. It is subject to the rule of strict construction. It cannot be delegated: Mechem Public Officers, §§ 830; 567. Its purpose is obvious. A returned soldier, crippled, disabled in the service of his country, and needy, may, pursuant to this discretionary power, be given rights of priority over a returned soldier not needy and who has never been to the front. But it is urged that the claims of all returned soldiers, under the proposed contract, will now be paid without delay at the average amount of their face value. This may be true; yet the alternative is presented whereby a returned soldier, disabled and needy, is necessarily required to discount 18 per cent. his claim, otherwise payable, perchance, upon March 15, 1923, in full under the proposed contract, in order to secure payment and avoid indefinite postponement of payment. But again it may be urged that this discretion is conferred by statute, and that such proposed contract is simply one of the methods of exercising such discretion. However, if the nature of such discretion is to be so construed, what would be said of a contract made by the adjutant general and the commission to the effect that they would pay the claim of Jones, a returned soldier, prior to the claim of Smith, another returned soldier, if Jones would accept 18 per cent. discount. The answer may be made that the proposed illustration would be unfair and unjust, whereas the proposed contract affords a just and fair method of present disbursement; nevertheless, necessarily, in some cases under the proposed contract some of such returned soldiers must submit to a discount of 18 per cent. or thereabouts that they would otherwise not be compelled to pay under the present plan. The law requires the payment of the compensation awarded to the soldiers 100 cents on the dollar. The contract submitted proposes to discount the award and pay to each soldier 82 cents on the dollar. The contract stipulates that the investment companies shall pay 97 per cent. of the principal sum of the notes to be issued by the Industrial Commission. This grants a 3 per cent. commission to the investment companies. This must

be paid either by the state or out of the soldiers' claims. The statute confers no authority to pay a commission out of the state funds or to deduct a commission from the soldiers' claims. The statute permits the exercise of a discretion in determining priorities. The proposed contract takes away this discretion and destroys all priority. The statute fixes, ordinarily, the priorities. The contract destroys these priorities. The proposed contract, if valid, necessarily must bind this discretion of the Commission until all the assigned claims purchased thereunder are paid and destroys the right of the Commission to exercise any discretion preferential to such assigned claims until they are entirely paid. Supposing the legislature should desire to further amend the law by providing some method of paying these claims in full 100 cents on the dollar, or otherwise should desire to give certain priorities to needy and disabled soldiers; would it be contended that by this contract the hands of the Legislature are tied, and all claims so purchased and assigned pursuant thereto must be paid out of the public funds exactly pursuant to such contract? The present law requires that the compensation paid shall be used within the state only. The adjutant and the Industrial Commission are granted a discretion to otherwise direct. Nothing is said in the proposed contract in this regard. Yet it necessarily follows that 18 per cent. of the public funds will necessarily be disbursed without the state and at the city of New York, the place of payment stated in the proposed notes. Furthermore, the resolution and proposed contract does not show that the beneficiaries, the holders of the soldiers' certificates, either present or prospective, have consented to the arrangement by which the Industrial Commission, as the defendants contend, will act as trustees.

Manifestly broad questions of public policy are involved as well as general principles underlying the essentials of a valid contract. The legislature has conferred a continuing discretionary power. The proposed contract bargains this discretion and eliminates its continuing force. The legislative act requires the payment of the award out of public funds in full. The proposed contract requires the certificate holder to accept a lesser amount. This borders upon the exercise of a legislative power which is contrary to the legislative mandate requiring payment to be made in full. See Lukens v. Nye, 156 Cal. 498, 105 Pac. 593, 36 L. R. A. (N. S.) 244, 20 Ann. Cas. 158; Brule County v. King, 11 S. D. 294, 300, 77 N. W. 107. Again, if it be conceded that such power to bargain the discretion conferred is permissible, the proposed contract operates

to stifle competitive bidding upon all the certificates for all time to come. The proposed contract gives to the investment companies the exclusive right to purchase all such certificates. If some other company, tomorrow or on the day thereafter, should offer a more favorable rate to the soldiers, the Industrial Commission have waived their discretion and abandoned their right to negotiate.

The purposes of the proposed contract may, indeed, be highly laudable. The attempt to secure expeditious payment of the moneys to returned soldiers is deserving of commendation. Indeed, the returned soldiers each and every one of them, should receive 100 cents on the dollar awarded by statute to them. Clearly the purposes of the act is to secure compensation and disbursement of compensation, 100 cents on the dollar. The defects existing in the present law, which does not provide a method of financing the present payment of soldiers' claims, is a matter addressed to the legislature. It is not a matter wherein the executive authority may assume a legislative power, nor the courts, by judicial fiat, create a legislative power. Praiseworthy as the effort may be, the majesty of the law must be upheld, as it is prescribed without emasculation by judicial fiat. For the reasons stated the proposed contract, considered as not pledging the state's credit, cannot be upheld.

If, as the defendants otherwise contend, the proposed contract be construed as a loan or borrowing of money, we are clearly of the opinion that no express legislative authority exists for the exercise of such power by the adjutant general and the Industrial Commission.

Although the Industrial Commission are given wide discretionary powers concerning state enterprises and utilities, nevertheless these powers, generally speaking, are concerned with such activities functioning separate from the state. Sargent County v. Bank of N. D. (N. D.) 182 N. W. 270. The funds involved herein are public funds raised by the state, directly through taxation, in its sovereign capacity, for a public purpose. These funds may not be impaired by hypothecation of the officers in charge, nor the state's credit pledged, unless there exists express authority therefor. In the case of State ex rel. Bauer v. Nestos et al. (N. D.) 187 N. W. 233, express statutory authority was there conferred in the statute concerned. It is not conferred in the soldiers' acts, and accordingly is not possessed by the officers concerned. It is entire-

ly unnecessary to consider the constitutional questions raised. In our opinion the trial court properly overruled the demurrer to the complaint.

BIRDZELL, C. J., and CHRISTIANSON, J., concur.

GRACE, J., not participating.

ROBINSON, J. (concurring specially). On June 29th the contract in question was made, and this action commenced. On June 30th the action was submitted to the district court. On July 1st an order was made overruling a demurrer to the complaint. On July 1st an appeal was taken to the Supreme Court, and a motion made to advance the case. On July 3d, at 10 a. m., the case was argued and submitted to this court, all in good record time.

The plaintiff brings this action to enjoin the state officers from making a contract in regard to the payment of soldiers' bonuses. The real and manifest purpose of the action is not to enjoin the making of the contract, but to obtain a judgment of this court in favor of the proposed contract. This is a made-up case, a legal sham battle.

The complaint avers that on June 29, 1922, the Industrial Commission and the adjutant general contracted with the Minnesota Loan & Trust Company for the payment of soldiers' bonus certificates; that the adjutant general approved and joined in the contract, which is to this effect: The trust company agrees to purchase soldiers' bonus certificates to the amount of $6,500,000 for the cash price of 82 per cent. of the face value of the same; the money to be paid on certificates of the Industrial Commission and the adjutant general giving a list of the bonus certificates, showing that the same represents valid obligations of the state of North Dakota, under chap. 103, Laws of 1921, chap. 206, Laws of 1919, and chap. 55, Laws of Special Session of 1919; that no defense exists or will be interposed to the payment of such soldiers' certificates as may be purchased by the company; that for the sum loaned the commission agrees to make notes to the company, dated July 1, 1922, each for $1,000 or multiples thereof, with interest at 6 per cent. payable semiannually; that, in making payment of the bonus certificates, preference must be given to certificates represented by the trust company over any other certificates now or hereafter issued under said statutes.

The agreement is lengthy, and it purports to be signed by the Industrial Commission, the several members of the Commission, the Governor, the adjutant general, and the trust company. There are several reasons for reversing the order and dismissing the action:

(1)   It is a sham case.  It presents no legal  dispute.  While  the plaintiff sues to enjoin the making of the contract, the real purpose of the action is to obtain a judgment sustaining the contract.

(2)   There is no showing that the Industrial Commission has any power to make such a contract, and they have no such power.

(3)   Another reason is that the constitutional validity of such bonus acts is not clear beyond question, and some courts hold against such acts on the ground that the legislature may not take the property of one citizen and give it to another person, or class of persons, however deserving they may be (People v. Westchester County Nat. Bank, 231 N. Y. 465, 132 N. E. 241, 15 A. L. R. 1344), but in this case there is no occasion for passing on the constitutional validity of the several acts. If it be conceded that the acts are all valid, and do authorize the levying and collection of taxes for the payment of the bonus, it must be conceded that the state was under no legal obligations to pass the acts or to pay the bonus.  At best, the several bonus acts do constitute a gratuitous promise, which, however, laudable, any subsequent legislature may revoke and undo.  There is no occasion for an extended argument, because it is entirely clear on elementary principles, and on the reading of the industrial commission statute, that it has no power to make the contract in question.

Hence the order overruling the demurrer is affirmed.