[File No. 6466.]

CATHOLIC ORDER OF FORESTERS, a Fraternal Benefit Society, Incorporated, Appellant, v. STATE OF NORTH DAKOTA, Respondent.

(271 N. W. 670, 109 A.L.R. 979.)

Opinion filed February 13, 1937.

*Fuller & Powers,* for appellant.

230

*P. O. Sathre,* Attorney General, *Charles A. Verret* and *Francis Murphy,* Assistant Attorneys General and *George F. Shafer,* Special Counsel (*P. H. Butler* of Counsel), for respondent.

NUESSLE, J. Plaintiff brought this action to have determined the question as to whether the Industrial Commission (see chapter 151, Sess. Laws 1919, § 368a1, et seq., 1925 Supplement) may call certain bonds issued by the state of North Dakota pursuant to the provisions of chapter 154, Sess. Laws 1919 (§§ 2290b1 et seq., 1925 Supplement) prior to the dates of their maturities. The trial court held adversely to the plaintiff, and from the judgment ordered and entered accordingly plaintiff perfected the instant appeal.

The case is here on the pleadings and certain stipulations of fact. It appears therefrom that in 1921 and 1922 the state of North Dakota issued certain bonds as of dates July 1, 1921, January 1, 1922, and November 1, 1922, designated Real Estate Series "A", "B" and "C", respectively, and respectively maturing on July 1, 1948, January 1, 1947, and January 1, 1945. In addition to specifying "value of denomination", "period of maturity", and "rate of interest", each of these bonds recites on its face that "The full faith and credit of the State of North Dakota is pledged for the payment of both principal and interest of this bond, and it is secured by first mortgages upon real estate in amounts not exceeding one-half of its value, and which mortgages have been deposited with the State Treasurer of North Dakota as trustee, and is issued in pursuance of the provisions of the 'Real Estate Bond Act of North Dakota,' Chapter 154, 1919 Session Laws, and is exempt from state, county and municipal taxes of any and all kinds.

"The bond and respective coupons hereto attached must be presented for payment at the office of the State Treasurer within six years from the ·date of its maturity; and neither the bond nor any such coupons shall bear interest after maturity unless payment shall not be made upon due presentation."

The bonds in themselves contain no provision that they may be called prior to their dates of final maturity. Nor do they ·specify that they may not be called or that the maker waives the option to call them. And there is evidence in the record tending to show that at ·the time the bonds were issued some question was raised as to

whether they might be called by the Industrial Commission prior to their due dates. It further appears that the Industrial Commission in the preliminary contract entered into with the purchaser stipulated that the bonds should be "without option" and that the Commission procured from the attorneys who passed upon the issue an opinion that "These bonds are issued under chapter 154 of the Laws of North Dakota for 1919, and this law plainly authorized bonds of fixed maturities and at the option of the Industrial Commission the bonds may be called as therein stated. . . . This statute means that the option of the Commission can be expressed before the bonds are issued, and if so, the bonds can be made payable on fixed dates without option, and this has been done by the Commission prior to the issuance of the bonds at a meeting held on July 6, 1921, a copy of which is in my possession." This opinion was submitted to the purchaser of the first issue, Series "A" of the bonds preliminary to the sale thereof. It further appears that while the bonds of Series "B" and Series "C" were sold at a later period by an Industrial Commission differently constituted, there was no disaffirmance of the position theretofore taken by the Commission which sold the first issue. This evidence was offered for the purpose of showing the administrative construction that was put upon the statute in question by the officers charged with the duty of carrying it into effect.

On or about the 29th day of June, 1936, the Industrial Commission passed a resolution to the effect that all the outstanding unpaid bonds of Real Estate Series "A", "B", and "C", be called for payment at par and accrued interest on July 1, 1937, and that public notice to that effect be given. Thereafter such notice was given by publication in the issues of June 30, 1936, or July 1, 1936, in four of the daily newspapers of largest circulation in the state of North Dakota, and repeated on the 30th day of each succeeding month to and including November 30, 1936, and by publication in the Daily Bond Buyer of the City of New York, in the Chicago Journal of Commerce of the City of Chicago, in the Wall Street Journal of the City of New York, in the issues of said publications of July 1, 1936. On June 30, 1936, the Associated Press carried a full account of said notice of payment and redemption of said bonds to its subscribers. In addition a copy of said notice of call was delivered by the sole

paying agencies for state bonds and coupons to each holder presenting coupons for payment on July 1, 1936.

Section 182 of the Constitution of North Dakota provides that "The state may issue or guarantee the payment of bonds, provided that all bonds in excess of two million dollars shall be secured by first mortgages upon real estate in amounts not to exceed one-half of its value; or upon real or personal property of state owned utilities, enterprises or industries, in amounts not exceeding its value, and provided further, that the state shall not issue or guarantee bonds upon property of state owned utilities, enterprises or industries in excess of ten million dollars." This section of the Constitution was amended to so provide by an initiated amendment, adopted by the people at the general election in 1918 (see page 507, Sess. Laws 1919). Thereafter and pursuant to the authority thus delegated, the Sixteenth Legislative Assembly in 1919 enacted chapter 147, Sess. Laws 1919 (§ 5192a1, Supp., the Bank of North Dakota Act), and complementary thereto chapter 154, Sess. Laws 1919, the act here in question, pursuant to which the bonds involved in this litigation were issued. The same Legislative Assembly also enacted chapter 148, Sess. Laws 1919 (§ 2290a1, 1925 Supplement), providing for the issuance of bonds of North Dakota, Bank Series; chapter 151, Sess. Laws 1919 (§ 368a1, 1925 Supplement) heretofore referred to, creating the Industrial Commission; chapter 152, Sess. Laws 1919 (§ 368c1, 1925 Supplement), establishing the North Dakota Mill and Elevator Association; chapter 153, Sess. Laws 1919 (§ 2290d1, 1925 Supplement) authorizing the issuance of bonds of North Dakota Mill and Elevator Series; chapter 150, Sess. Laws 1919 (§ 368b1, 1925 Supplement), establishing the Home Building Association of North Dakota; and thereafter, at a special session convened in December, 1919, enacted chapter 24, Special Session Laws of 1919 (§ 2290f1, 1925 Supplement) authorizing the issuance of bonds of North Dakota, Home Building Series.

As heretofore stated, the bonds with which the instant case is concerned were issued pursuant to the provisions of chapter 154, supra. Section 4 of said chapter reads as follows: "Section 4. The bonds so issued shall be payable to the purchaser or bearer; provided, however, that the provisions of § 151, Compiled Laws of 1913, are hereby de-

clared to apply to them. They shall be issued in denominations of from five dollars to ten thousand dollars, and shall be payable in not less than ten or more than thirty years from the passage of this Act; provided, however, that at the option of the Industrial Commission they shall be payable at any time after five years from the date of their issue, upon public notice given by the Industrial Commission that they shall mature and become payable at a date not less than one year from the time of the giving of such public notice. They shall bear interest at a rate not exceeding six per cent per annum from their date until maturity, payable semi-annually on the first day of January and of July in each year; and coupons shall be attached to each bond, evidencing the amount of interest payable at each first day of January and July until maturity. Principal and interest shall be payable at the office of the State Treasurer in Bismarck. The terms of said bonds, as to values of denominations, periods of maturity and rates of interest, shall be fixed by the Commission in its sound judgment, within the limitations above stated. Every such bond and coupon must be presented for payment at the office of the State Treasurer within six years from the date of its maturity; and no such bond or coupon shall bear interest after maturity unless payment thereof shall not be made upon due presentation for payment."

It is conceded that these bonds are valid obligations of the state of North Dakota. It is further conceded that all of the provisions of chapter 154, supra, pursuant to which they were issued, are as much to be considered terms of the bonds as though such provisions were stated on the faces thereof. In this connection, see People's Bank v. School Dist. 3 N. D. 496, 57 N. W. 787, 28 L.R.A. 642; Federal Farm Mortg. Corp. v. Falk, ante, 154, 270 N. W. 885, — A.L.R. —; McClure v. Oxford Twp. 94 U. S. 429, 24 L. ed. 129; National Bank v. St. Joseph (C. C.) 24 Blatchf. 436, 31 F. 216. It follows that the question here is purely and simply one of contract. Whether profit shall be made or loss shall be suffered by either the maker or the holders of these bonds is wholly immaterial. The rights and obligations of the parties are defined by the contract in the bond, including of course the statute pursuant to which the bond was issued. In this respect these bonds differ not at all from any other negotiable instruments. The question is, what is that contract? The answer

rests on the interpretation and effect to be given to chapter 154 and particularly to § 4 thereof heretofore quoted.

The plaintiff contends that under the terms of that section the Industrial Commission if it had the power to determine whether and when the bonds might be called prior to their dates of maturity, could express its option to that effect before the bonds were issued; that therefore it could make the bonds payable on fixed dates without option; that it did so fix the maturity dates of the bonds here involved and therefore could not after the bonds were disposed of exercise an option to call the bonds prior to such dates of maturity; that, in any event, even though the legislature intended and expressed an intent to that effect in the statute that the bonds might be called at the pleasure of the Industrial Commission after the expiration of five years from date of issue and before the dates of maturity, nevertheless, the statute is so indefinite with respect to the notice required to be given and the Commission not having specified the notice to be given, that the option to call the bonds cannot be exercised. On the other hand, the defendant contends that the provisions of § 4 of chapter 154 are clear and susceptible of but one construction: that pursuant to the terms of said section the bonds may be called prior to the date of maturity on any date after the expiration of five years from date of issue; that the notice required to be given is a notice to the public generally and may be given in a manner to be determined by the Commission; that since the statute must be considered a part of each bond contract, the holders are charged with notice of the terms thereof and, therefore, pursuant to the contract the bonds were properly called by the Industrial Commission.

It seems to us, reading the provisions of chapter 154 and giving to the words thereof their ordinary and general meaning, there can be no question but that the legislature intended that the bonds might be called at any time after five years from the dates of their issue at the option of the Commission upon giving notice as provided by the statute. Where the words of a statute are general the courts are not at liberty to insert limitations not called for by the sense or object of the enactment. United States v. Coombs, 12 Pet. 72, 9 L. ed. 1004. The statute, § 3, provides that the bonds shall be executed by the

governor and the state treasurer under the great seal of the state and shall be attested by the secretary of state. Section 6 requires the governor and the state treasurer after the issue, execution, sealing and attestation of the bonds to deliver them to the Industrial Commission in such denominations and amounts, bearing interest at such rates, and running to such periods of maturity as may be required by the Commission within the limitations hereinbefore stated. Section 4, heretofore quoted, provides that "The terms of said bonds, as to values of denominations, periods of maturity and rates of interest, shall be fixed by the Commission in its sound judgment, within the limitations above stated." The limitations referred to in that part of § 4 just quoted and in § 6, manifestly are those set out in the prior portion of § 4, to-wit: that the bonds shall be issued in denominations of from five dollars to ten thousand dollars; that they shall be payable in not less than ten or more than thirty years from the passage of the act; that they shall bear interest at a rate not exceeding six per cent per annum from their date until maturity, payable semi-annually on the first day of January and July of each year. Beyond these limitations the Commission in issuing the bonds has no discretion. Within these limitations the Commission determines the denomination of the bonds, fixes the dates of maturity and the rates of interest. And it must exercise its discretion in these respects—otherwise there can be no bonds. But as regards the matter of the option contained in the proviso in § 4, the situation is wholly different. There is no necessity that this option be referred to in the bonds themselves. A reference to the statute is sufficient. There is no reason why, and so no requirement that, the option shall be exercised prior to the issuance of the bonds. The fact that § 4 specifically provides that the terms of the bonds as to values of denomination, periods of maturity and rates of interest shall be fixed by the Commission in its sound judgment within the limitations stated, and makes no reference to the option to call the bonds; and that § 6 provides that it shall be the duty of the governor and state treasurer to deliver the bonds to the Commission in such denominations and amounts, bearing interest at such rates, and running to such periods of maturity as may be required by the Commission "within the limitations stated" and makes no reference to the option, is further indicative that there was no

intention that such option need be exercised prior to the issuance of the bonds or prior to the expiration of the five-year period from the dates of their issue, or that the right to exercise the option should be stated in the bonds at the time of their issuance. This common sense interpretation of the statute is further sustained by a consideration of the provisions of chapter 147 (the Bank of North Dakota Act) to which chapter 154 is complementary. The Bank of North Dakota Act, § 15, provides that the bank may make loans to any individual, association or private corporation, secured by duly recorded first mortgages on real estate in the state of North Dakota in amounts not to exceed one-half of the value of the property; § 17 provides that every such mortgage so taken shall contain an agreement providing for the repayment of the loan on an amortization plan by means of a fixed number of annual instalments sufficient to cover, first, a charge on the loan at a rate not exceeding the interest rate in the last series of real estate loan bonds issued; second, a charge for administration and surplus at a rate not exceeding one per cent per annum on the unpaid principal, said two rates combined constituting the interest rate on the mortgage; and, third, such amounts to be applied on the principal as will extinguish the debt in not less than ten nor more than thirty years. It provides further that advance payments of one or more annual instalments for the reduction of the principal or the payment of the entire principal may be made at any regular instalment date. It further provides, § 20, that such mortgages so taken shall upon order of the Industrial Commission be assigned to the state treasurer as security for bonds to be issued by the state as provided by law. Now turning again to chapter 154, supra, § 2 provides that when such mortgages so taken under the provisions of the Bank of North Dakota Act shall be held by the Bank of North Dakota, securing mortgage loans in at least one hundred thousand dollars, the Industrial Commission may cause them to be assigned to the state treasurer to be by him held in trust as security for bonds to be issued by the state under the designation of Bonds of North Dakota, Real Estate Series. Thus chapter 154 is complementary to chapter 147, and these requirements stated in § 4 of chapter 154 exactly meet the conditions resulting from the taking of the mortgage security as required in chapter 147. That is, the bond rate of interest fixes the rate of in-

terest to be paid by the borrower on his mortgage security and the term of the bond may be for the same period for which the amortized loans may be made. And since the mortgage debtors may prepay and the amounts that may be thus prepaid are not ascertainable in advance of payment, the option is given the Industrial Commission to call the bonds at any time after five years from the date of their issue. Clearly the purpose of the option proviso is to enable the Industrial Commission to call the bonds in case the mortgagors take advantage of their prepayment privilege. Thus the Commission in the public interest is charged with the duty to take up the bonds at any time after five years from the date of their issue should the payments realized from the primary security (the mortgages) and other circumstances and conditions make it advantageous to do so. The amounts that may be thus prepaid by the mortgagors cannot be ascertained in advance, so the statute does not require the Industrial Commission to exercise the option in advance of issue, and since the statute must be considered as part of the bond there can be no object in requiring the Industrial Commission to recite in the bonds when issued that such bonds may be callable after the expiration of five years from the date of their issue. In short, the option cannot be exercised in advance. See Bauernfeind v. Nestos, 48 N. D. 1218, 189 N. W. 506. Neither can the right to exercise it be waived. Considering the words of §·4 alone, there can be little room to differ regarding the legislative intention expressed thereby. Reading these words in the light of the plan and purpose shown in chapter 154 as a whole and its companion statute, chapter 147, to say nothing of other enactments of the same legislative assembly, that intention is clear beyond the possibility of a doubt. As sustaining the foregoing conclusions, see National Bank v. St. Joseph (C. C.) 24 Blatchf. 436, 31 F. 216, supra; State ex rel. R. J. Edwards v. Keith, 179 Okla. 563, 66 P. (2d) 1059.

But let us now consider other enactments of the Sixteenth Legislative Assembly heretofore referred to that may also throw some light upon the interpretation to be given those provisions of chapter 154 that we have been considering. For instance; chapter 150, Sess. Laws 1919, supra, established the Home Building Association of North Dakota. It provided a scheme whereby a home building association might build and sell homes to citizens. It provided further

that on payment of a portion of the purchase price of said homes the association might convey the same to the purchasers and take purchase money mortgages on the property for the unpaid portions of the purchase price. Chapter 24 of the Special Session Laws of 1919, authorized the issuance of bonds of North Dakota, Home Building Series. It was complementary to chapter 150 in the same manner and to the same effect that chapter 154 is complementary to chapter 147. And the provisions of said chapter 24 with respect to the bonds to be issued and the issuance thereof and the terms and conditions of the same are identical in wording with the provisions of chapter 154 respecting the bonds to be issued pursuant to the provisions of that chapter. On the other hand, the Sixteenth Legislative Assembly also enacted chapter 148, supra, also complementary to chapter 147. Chapter 147, § 6, provided that the Bank of North Dakota should be open and proceed to transact business whenever there should be delivered to the Industrial Commission bonds in the sum of two million dollars issued by the state as might be provided by law for such purpose. Chapter 148 provided for the issuance and sale of such bonds. The provisions of chapter 148, §§ 2 and 4, with respect to the issuance, terms and conditions of such bonds, are identical with the provisions governing the issuance, terms and conditions of the Real Estate Series Bonds, excepting only that the terms of said bonds as to values of denominations, periods of maturity and rates of interest must be fixed by the governor "within the limitations above stated," and that there is no proviso for an option to call the bonds prior to their periods of maturity. The same parallel runs with respect to chapter 152, supra, establishing the North Dakota Mill and Elevator Association, and chapter 153, supra, authorizing the issuance of bonds of North Dakota Mill and Elevator Series. The reason for the omission of the option provision is immediately apparent. There were in the latter two cases no obligations due to the state which stood as the primary security for the bonds issued by the state and out of which it was contemplated such bonds should be paid. Considering the history of this legislation there is no other conclusion possible than that which we have drawn from the reading of the provisions of § 4, that is, that the bonds shall be callable at the option of the Industrial Commission at any time after five years from the

date of their issue; that the option shall not be exercised until after the expiration of the five-year period, and that the fact that it may be exercised need not be stated in the bonds themselves.

Again, as indicating the interpretation which subsequent sessions of the Legislative Assembly put upon chapter 154, Sess. Laws 1919, chapter 292, Sess. Laws 1923, and chapter 182, Sess. Laws 1929 may be worthy of consideration. Chapter 292, Sess. Laws 1923, provided for the issuance of bonds of North Dakota Real Estate Series. In many respects it is patterned on chapter 154, Sess. Laws 1919. Section 4 of chapter 292 is identical with § 4 of chapter 154, Sess. Laws 1919, except that it provides that "at the option of the Industrial Commission they (the bonds) may, *when issued*, be made payable at any time after five years from the date of their issue upon notice given by the Industrial Commission that they shall mature and become payable at a date not less than one year from the time of the giving such notice." Thus it will be seen by this later enactment that the legislature expressly provided that the option to call the bonds after five years from the date of issue must be expressed when the bonds were issued. The implication from this change is that in the absence of such a requirement the option need not be expressed when issuing the bonds. And chapter 182, Sess. Laws 1929, amending § 2290c7, 1925 Supplement, provides, among other things, that "at the request of the industrial commission the state treasurer shall redeem and take up out of said real estate bond sinking funds any of the Series "A," "B," or "C," Real Estate Bonds outstanding which may be called by the industrial commission; and the industrial commission shall notify the state treasurer of such call one year in advance thereof." Clearly, the import of this provision is that the Real Estate Bonds, Series "A," "B" and "C" may be called by the Industrial Commission.

It is argued that the phrase "at any time" contained in the option proviso in § 4 of chapter 154, means "within a reasonable time" or "immediately" after the expiration of five years, and that since this option was not exercised immediately or within a reasonable time after the expiration of the five-year period, it cannot be exercised at all. But the word "any" is a general word and may have a diversity of meanings, its meaning in any particular case depending largely

upon the context and subject matter of the statute or instrument in which it is used. 3 C. J. 230. And though "any time" may mean within a reasonable time or immediately in some cases, yet, determining its meaning in the instant case from the whole of section 4 it cannot have these meanings. And, somewhat inconsistently, it is also argued that since "any" is a word of indefinite or general meaning that the phrase "at any time" in the proviso gives the Industrial Commission the power to indefinitely extend even to the limits of eternity, the date of maturity of the bonds, and that therefore the provision contravenes § 182 of the Constitution of North Dakota, supra. Again applying the rule heretofore referred to, neither of these meanings for which the plaintiff contends could have been within the intention of the legislature when it used the term "at any time." Reading the whole of § 4, especially in the light of the other provisions of chapter 154 and of the provisions of chapter 147, "at any time after five years from the date of their issue" means at any time after five years from the date of the issue of the bonds and before the date of their stated maturities.

It is further contended that the provision in § 4 relating to the notice to be given when the bonds are called is so indefinite that the option to call the bonds cannot be exercised. It seems to us that the phrase "upon public notice given" in this section is not so indefinite and uncertain as to deprive the Commission of the power to exercise the option to call the bonds. The statute leaves it to the Commission to say what notice shall be given. It empowers it to determine how that notice shall be given. It says, "public notice." That is reasonable notice to the public generally as distinguished from notice personally to the holders of the bonds. And when general publicity was given as to those called in the manner shown by the record in this case, certainly reasonable general public notice was given. It is further contended that, in any event, such notice was not timely for the reason that the notice was not completely given until July 1, 1936, and that the call was for July 1, 1937, and therefore the requirement of the statute as to the length of the notice was not complied with. But the statute says that notice shall be given that the bonds shall mature and become payable at a date not less than one year from the time

of the giving of such notice. The notice was given on June 30 or July 1, 1936. The date on which the bonds were made mature and payable was given in such notice as July 1, 1937. We think that this was a compliance with the requirement of not less than one year from the time of the giving of the notice.

Finally, the plaintiff contends that by calling the bonds for payment on July 1, 1937, the defendant is impairing the obligation of the contract contained in said bonds and depriving the plaintiff of its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

There is no merit to this contention. It may be arguable that there is a breach of its contract by the defendant, but we cannot see where there is any basis for the contention that there is an impairment. And as we have shown the contract out of which the defendant's obligation arises rests upon the interpretation and effect given to chapter 154, Sess. Laws 1919, which is included within and a part of such contract. And since the clear meaning and intent of the legislature as expressed in the enactment in question is that the bonds shall be callable at the option of the Industrial Commission, exercised in the manner in which it was exercised in the instant case, there is neither breach nor impairment of the obligations of said contract and the plaintiff is not deprived of its property without due process of law.

The judgment of the district court must be and it is affirmed. Writ of certiorari denied in 301 U. S. 665, 81 L. ed. 1331, 57 S. Ct. 796.

CHRISTIANSON, Ch. J., and BURKE, MORRIS and BURR, JJ., concur.