BOND & GOODWIN, INCORPORATED, Plaintiff, *v.* FRANCIS I. DUPONT and Others, Individually and as Copartners Doing Business as and under the Name of FRANCIS I. DUPONT & Co., and ALBERT J. QUIST, Doing Business under the Name and Style of QUIST & Co., Defendants.

First Department, June 24, 1938.

*Sewell T. Tyng* of counsel [*Harding F. Bancroft* with him on the brief; *Searle, James & Crawford,* attorneys], for the plaintiff.

*Granville Whittlesey, Jr.,* of counsel [*Theodore S. Hope, Jr.,* with him on the brief; *Donovan, Leisure, Newton & Lombard,* attorneys for Francis I. duPont & Co.; *Cooke, Brown & Pate,* attorneys for A. J. Quist], for the defendants.

TOWNLEY, J. Plaintiff buyer sues the sellers to recover the difference between the purchase price paid for certain bonds and the price which the bonds would have cost had the true callable date been known. Similar contracts were made for the sale of two lots of North Dakota, Series B and Series C real estate bonds of the supposed callable dates of January 1, 1949, and January 1, 1948. Aside from minor adjustments, the actual price was to be determined by an amount which would represent a yield respectively of 3.70% and 3.60% per annum from the dates of purchase to the callable dates. The prices were accurately computed as intended.

The suit arises from the fact that the North Dakota Industrial Commission called the bonds of July 1, 1937, some twelve years sooner than it was expected that they would be called. The call was made five days after the transactions herein were completed. There was litigation in North Dakota questioning the right of the Industrial Commission to make this call but its power to do so was upheld by the Supreme Court of North Dakota. (*Catholic Order of Foresters* v. *State,* 67 N. D. 228; 271 N. W. 670.) It appears from the submission that at the time the purchases were made (June 23 and 24, 1936) both parties were mutually mistaken as to the callability of the bonds under the North Dakota statute. It is admitted in the briefs that such a mistake is a mistake of fact and there is judicial authority to justify that stipulation. (*Bank of Chillicothe* v. *Dodge,* 8 Barb. 233, and *Ætna Ins. Co.* v. *Mayor,* 7 App. Div. 145; affd., 153 N. Y. 331.)

This submission may be disposed of in favor of the defendants on

either one of several legal grounds. The first is that the proper remedy for relief from the effects of a mutual mistake of fact, where concededly no fraud is involved, is rescission of the transaction. No attempt to rescind has been made.

The action is sought to be sustained upon the theory of money had and received and recovery is demanded of the difference between what plaintiff paid and what it is assumed it would have paid had the true maturity of the bonds been known. The difficulty with this theory is that the submission contains nothing indicating upon what basis the parties would have contracted had the earlier maturity been known. There is in fact nothing to show that the plaintiff would have been interested in purchasing or the defendants in selling under such conditions. The yield basis upon which the parties would be willing to contract would differ substantially in the case of a bond maturing in a year from one maturing in eleven or twelve years. Whether there would be any contract at all and what its terms would be would depend upon an entirely independent negotiation which never took place. Obviously, recovery may not be had for the difference between the price paid under the contract and an assumed price under a contract which was never made.

The second rule of law applicable to the case is that laid down by the Supreme Court of the United States in *Otis* v. *Cullum* (92 U. S. 447). In that case the plaintiffs had purchased certain city of Topeka, Kan., municipal bonds from the defendant. The statute under which they were issued was held unconstitutional and the plaintiffs lost their entire investment. The suit was brought to recover back the purchase price on the ground of failure of consideration. The court held that the complaint stated no cause of action and the decision was put on broad grounds of public policy. The court said:

" Such securities throng the channels of commerce, which they are made to seek, and where they find their market. They pass from hand to hand like bank-notes. The seller is liable *ex delicto* for bad faith; and *ex contractu* there is an implied warranty on his part that they belong to him, and that they are not forgeries. Where there is no express stipulation, there is no liability beyond this. If the buyer desires special protection, he must take a guaranty. He can dictate its terms, and refuse to buy unless it be given. If not taken, he cannot occupy the vantage-ground upon which it would have placed him.

" It would be unreasonably harsh to hold all those through whose hands such instruments may have passed liable according

to the principles which the plaintiffs in error insist shall be applied in this case.''

The cases cited by plaintiff are easily distinguishable and do not involve dealings in State or municipal negotiable instruments which were purchased without any warranty other than that which naturally follows from the Negotiable Instruments Law. It is a sound public policy which declares that the risk of determining the ultimate validity of State or municipal securities should rest upon the purchasers in the absence of any specific guaranty. Dealers, such as the plaintiff, in municipal bonds are charged with notice of the laws of the State granting the power to make the bonds in which they are dealing. (*Anthony* v. *County of Jasper*, 101 U. S. 693, 697.) So much of the doctrine of *caveat emptor* still exists. There is obviously no more fairness in shifting the risk of loss to the sellers than there is in placing it on the buyers who had equal chance with the sellers in determining what the foreign law was.

There is also a practical reason for coming to the same conclusion as was reached by the Supreme Court of the United States. To permit suits like the present would be to allow damage actions in all previous similar transactions up to the time when the Statute of Limitations might be a defense. If there were any strong equitable reasons for shifting the loss in that fashion, of course, the courts should bear the burden of such litigation, but in the absence of any equities to justify it, an action for money had and received, which is essentially equitable in its nature, should not be permitted.

There is a final reason which is conclusive. The contracts herein involved negotiating public securities other than ordinary bills and notes by delivery without an indorsement either general or qualified. The liabilities of the party so negotiating an instrument are determined by statute and are set out in section 115 of the Negotiable Instruments Law. The duty therein is described as follows:

" Warranty; where negotiation by delivery or by a qualified indorsement. Every person negotiating an instrument by delivery or by a qualified indorsement, warrants:

" 1. That the instrument is genuine and in all respects what it purports to be;

" 2. That he has a good title to it;

" 3. That all prior parties had capacity to contract;

" 4. That he has no knowledge of any fact which would impair the validity of the instrument or render it valueless.

" But when the negotiation is by delivery only, the warranty extends in favor of no holder other than the immediate transferee.

The provisions of subdivision three of this section do not apply to persons negotiating public or corporate securities, other than bills and notes."

As is obvious subdivision " 3 " is not applicable to the transaction in suit. As for subdivisions " 1 " and " 2," the instrument was genuine and in all respects exactly what it purported to be and the defendants had good title to it; as for subdivision " 4," there is no claim that the defendants had any knowledge of any fact which would impair the validity of the instrument or render it valueless or even partially valueless. The sellers did deliver with the instruments certain legal opinions but they were delivered as opinions and as the ground for the belief in the sellers as to when the instrument was due. But the party negotiating the instrument does not warrant that there can be no acceleration of the due date of the instrument by operation of law. We search the section in vain for any violation of duty which would justify plaintiff's claim. This section represents the law merchant as it was generally understood before the Negotiable Instruments Law was passed in 1909. In fact, the Court of Appeals said as far back as 1878 (*Littauer* v. *Goldman*, 72 N. Y. 506): " The rule is well settled that generally one who transfers paper by delivery only, incurs none of the liabilities which attach to the indorser, for the reason that the irresistible inference is, that if he transfers it and it is received without his indorsement, that such liabilities did not enter into the bargain or the intention of the parties."

Judgment should be entered for the defendants, without costs.

O'MALLEY, GLENNON, DORE and CALLAHAN, JJ., concur.

Judgment unanimously directed in favor of the defendants, without costs. Settle order on notice.