[File No. 7242]

In the Matter of the exclusion of lands from the Heart River
Irrigation District. NATHANIEL C. STARK and Alice
Stark et al, Respondents, v. HEART RIVER IRRIGA-
TION DISTRICT, a body corporate, Appellant.

(49 NW2d 217)

Opinion filed August 23, 1951.   Rehearing denied September 29, 1951

*Sullivan, Kelsch & Scanlon,* for appellant.

*Strutz, Jansonius & Fleck,* for respondents.

I. A. Acker, Special Assistant Attorney General, Amicus Curiae.

NELSON, District Judge. This is an appeal from the judgment of the district court of Morton County, North Dakota, entered on a trial de novo on appeal from an order of the board of directors of appellant irrigation district retaining in the district portions of the lands of respondents which they had petitioned to have excluded therefrom. The case was recently before the court on a motion to dismiss the appeal. Stark et al, v. Heart

River Irrigation District, 47 NW2d 126. The motion was denied and the case is here for determination on the merits.

The irrigation district here involved was organized on July 31, 1946 by the order of the state engineer under the provisions of Chap. 61–05 NDRC 1943. There are in the district 20,985.5 acres of land held in one hundred twenty-five separate ownerships, of which 8971 acres are owned by the eighteen respondents herein. The petitions for exclusion are all based on the claims that all of the lands described therein are nonirrigable in their natural state for the various reasons set out in the several petitions and that the cost of leveling any areas that would be irrigable if leveled is prohibitive. Chap. 61–10 NDRC 1943 provides for changing the boundaries of an irrigation district already organized or excluding lands therefrom and prescribes the procedure. The pertinent portions of the applicable statutes are as follows:

Sec. 61–1014 NDRC 1943: "The owner or owners in fee of one or more tracts of land . . . may file with the board of directors of the district a petition praying that such tracts and any other tracts contiguous thereto be excluded and taken from the district. . . . The description of such lands need not be more particular nor certain than is required when the lands are entered in the assessment book by the township assessor."

Sec. 61–1015 NDRC 1943 provides for serving notice of hearing petition for exclusion of lands, what the notice shall contain, how the notice shall be published or posted and when the hearing thereon shall be had.

Sec. 61–1016 NDRC 1943 provides for hearing the petition and any written objections thereto, the assent of affected parties, and that nonirrigable lands may not be held by the district or taxed for irrigation purposes if from any natural cause it cannot be irrigated thereby, and is as follows:

"The board, at the time and place mentioned in the notice, or at the time to which the hearing of the petition may be adjourned, shall proceed to hear the petition and all objections thereto presented in writing. The failure of any person interested in the district to show cause in writing why the tract or

tracts of land mentioned in the petition should not be excluded from said district, shall be deemed an assent by him to the exclusion of such tract or tracts, or any part thereof, from said district. The filing of a petition with the board praying for the exclusion of lands from the district shall be deemed an assent by each petitioner to the exclusion from such district of the lands mentioned in the petition, or any part thereof. In no case shall any land be held by a district or taxed for irrigation purposes if from any natural cause it cannot be irrigated thereby."

Sec. 61–1017 NDRC 1943 confers on the board of directors of an irrigation district power to deny or grant petitions for the exclusion of lands except as such power may be limited by Sec. 61–1016, supra, and so far as material here is as follows:

"If the board does not deem it for the best interests of the district that the lands mentioned in the petition, or some portion thereof, should be excluded from the district, it shall deny the petition. If it deems it for the best interests of the district that the lands mentioned in the petition, or some portion thereof, be excluded from the district, . . . the board then may order the lands mentioned in the petition or some defined portion thereof excluded from the district."

Sec. 61–0733 NDRC 1943 provides for appeals from any order, act, or decision of the board of directors of an irrigation district to the district court and so far as material is as follows:

"An appeal may be taken to the district court from any order, act, or decision of the board of an irrigation district, by any person claiming to be aggrieved thereby, at any time within twenty days after the order, act, or decision appealed from has been made by the board. . . . The appeal shall be taken to the district court of the county in which the land claimed to be affected adversely by the act, order, or decision appealed from is situated, and if such land is situated in more than one county the appeal may be taken to the district court of any county in which any part of such land is situated. An appeal thus taken shall be docketed as any cause pending in the district court is docketed and shall be heard and determined

de novo. The district court may enter such order as the court shall deem just and proper."

Proceeding under the provisions of the foregoing statutes the respondents, on December 10, 1949, filed with the board of directors of the irrigation district—which will hereinafter be referred to as the board,—their separate petitions for exclusion from the district of all of the lands owned by them situated within the boundaries of the district. In compliance with the provisions of Sec. 61–1015, supra, due notice was given that the petitions filed would be considered by the board at a meeting to be held by it on January 10, 1950, at which time the petitioners were present in person and were represented by counsel. The petitions then filed were identified, and with certain exhibits attached, offered and received in evidence. The board also received and filed at said meeting separate plats of the lands of each petitioner prepared by the Bureau of Reclamation, United States Department of the Interior, and a schedule attached to each plat showing the number of acres in each ten acre tract classified as irrigable land and the tracts of ten acres or more containing little or no irrigable acreage. Six landowners in the district and the Bureau of Reclamation filed with the board written objections to the granting of said petitions. No further action was taken at the meeting. The board met again on January 20, 1950, at which time each petition theretofore filed with the board was separately considered and a conclusion reached as to the retention in or exclusion from the district of the lands described in each petition, the minutes of the board reciting that " . . . the board designated on maps of the petitioners' lands those tracts which in the judgment of the Board should be excluded from the District." and "directed the Secretary prepare an order for approval by the board members, and that such order show by description the lands designated for exclusion . . . ." The record discloses that following the meeting of January 20, 1950, a tentative order was prepared and later amended and corrected but never signed or entered on the minutes and that on March 15, 1950, the board held a meeting at which time the order for exclusion identified as exhibit 1, was signed but antedated to January 20, 1950, it being the only order of the board appearing

anywhere in the record. The order, exhibit 1, designated, by legal descriptions of ten acres or more the lands of each petitioner retained in the district and likewise designated the lands to be excluded therefrom. The minutes of the meeting of March 15, 1950, with reference to the signing of the order for exclusion of lands from the district recites "The directors signed the order for the exclusion of lands from the district. This being the official order, one copy to be mailed to each of the landowners described therein. One copy to place of record with the Register of Deeds of Morton County, one to be recorded with the Register of Deeds of Grant County. One copy to the attorneys for the petitioners."

We have made the foregoing somewhat extended statement of the chronology of events leading up to and including the making of the order retaining in the district portions of petitioners' lands because counsel for the State Water Conservation Commission, appearing amicus curiae, has moved that the appeal by respondents from the order of the board denying in part their petitions for exclusion of lands be dismissed on the ground that such appeal was not taken within the time prescribed by statute. It is counsel's contention that the board made its decision at its January 20, 1950, meeting and that the order signed on March 15, 1950, related back to the former date and was signed on March 15, 1950, so that a copy thereof might be certified to and filed in the offices of the registers of deeds and that because the order bears date January 20, 1950, it must be held that it was made on that date. The appeal to the district court from the order of the board was taken on March 28, 1950, which was within twenty days after the date of its actual execution and filing. Counsel contends it should have been taken within twenty days after January 20, 1950, and that not having been taken within such time the district court acquired no jurisdiction over the subject matter or the parties and consequently this court has no jurisdiction to hear or determine the matter.

The appeal from the order of the board was taken pursuant to the provisions of Sec. 61–0733 which provides that an appeal "may be taken to the district court . . . at any time within twenty days after the order, act, or decision appealed from

has been made by the board." The foregoing provision must be read in connection with Sec. 61–1021 NDRC 1943, which provides that:

*"Upon the entry in the minutes of the board* of any orders relating to the exclusion of land a copy thereof, certified by the president and secretary of the board, shall be filed for record in the office of the register of deeds of each county within which are situated any of the lands of the district. *Thereupon,* the district shall be an irrigation district as fully to every intent and purpose as it would be had no change been made in the boundaries of the district, or had the lands excluded therefrom never been constituted a portion thereof." (Italics ours.)

It is apparent from the foregoing statute that the legislature intended that the order to be made by the board of directors of an irrigation district upon an application for exclusion of lands therefrom should be entered in the minutes of the board and a certified copy thereof filed with the register of deeds before becoming effective. "The general rule would seem to be that for most purposes some entry or record of an order is necessary to its completion." State v. Lindeman, 64 ND 518, 254 NW 276, 93 ALR 1442, citing Freeman v. Wayne Probate Judge, 230 Mich 455, 203 NW 158; 20 RCL 512. It is axiomatic that one is not bound by an order of which he has neither actual nor constructive notice.

The rule that the time within which an appeal may be taken does not begin to run until the filing of the decision, order or judgment, or until notice of the entry thereof has been given, is of universal application in this jurisdiction. Thus in justice court, in criminal cases, an appeal may be taken at any time within thirty days *after the entry of judgment.* Sec. 33–1234, '49 Supp NDRC 1943. In civil actions an appeal may be taken within thirty days *after the rendition of judgment.* Sec. 33–1101 NDRC 1943; which section must, however, be read in connection with Secs. 3–0807–8 NDRC 1943 requiring judgment to be entered at once when trial is had by jury and at the close of the trial when the trial is to the court. Rendition of a judgment in such case is, therefore, synonymous with entry of judgment. An appeal may be taken within thirty days *after the*

*order of the commission has been filed with the secretary of the district* in cases involving water conservation districts. Sec. 61–1624 NDRC 1943. An appeal to the supreme court from a judgment may be taken within six months *after entry thereof by default or after written notice of the entry thereof,* in case the party against whom it is entered has appeared in the action. Sec. 28–2704 NDRC. Appeals from determinations of administrative agencies may be taken at any time within thirty days *after notice thereof has been given.* Sec. 28–3215 NDRC 1943.

The action of the board at its January 20, 1950, meeting amounted, we think, to nothing more than a direction to its secretary what order to prepare for submission to the members of the board. No order having in fact been signed or entered on the minutes until March 15, 1950, the time for appeal did not begin to run until that date. The rule applicable here is found in 4 CJS 912, Sec. 445:

"While the date of the judgment, order, or decree, as shown by the record, governs until corrected by proper proceeding, the commencement of the period (from which the right of appeal begins to run) cannot be made, by antedating the entry of an order or decree, or the signature thereof, to run from the date when such entry or signature purportedly was made rather than of the true date thereof; and when the rights of parties with respect to an appeal are determined by such date, they cannot be defeated or affected by the fact that the entry or signature is made expressly nunc pro tunc as of the prior date."

In the case of Rosslow v. Janssen, 136 Cal App 467, 29 Pac2d 287, the Court said:

"A court cannot, by antedating an order or the entry of it, cut off the right of a party to an appeal. This right given by the code is not lost or affected by such action. Spencer v. Troutt, 133 Cal 605, 65 Pac 1083. The rights of the parties in respect to an appeal being determined by the date of the actual entry of the judgment or order (CCP Sec. 939), they cannot be affected by the entry of the judgment or order nunc pro tunc as of a prior date. Martin v. Smith, 11 SD 437, 78 NW 1001."

And in Simon v. El Paso & S. W. Co. 22 NM 211, 160 Pac 352:

"The first proposition involves the question as to the time

within which an appeal may be taken from a judgment entered nunc pro tunc as of a former day. It is urged by appelant, we think correctly, that the time within which an appeal may be taken to this court in a case of this kind commences to run from the date of the entry of the nunc pro tunc judgment, and not from the date of the original judgment."

The Supreme Court of Iowa, in the case of Arnd v. Poston, 199 Iowa 931, 203 NW 260, said: "In determining the commencement of the time for appeal the date when the judgment is actually spread upon the record is the date from which this time is calculated." (Citing cases.) An appeal prior to the making of the order entered on the minutes on March 15, 1950, would have been premature. Oliver v. Wilson, 8 ND 590, 80 NW 757, 73 Am St Rep 784; Prescott'v. Brooks, 62 ND 771, 94 NW 88. "Until a written order has been made or a judgment rendered there would, of course, be no basis for an appeal." State v. Broderick, 75 ND 340, 27 NW2d 849. Statutes governing the right of appeal must be liberally construed to maintain the right. Stark et al. v. Heart River Irrigation District, supra. A party seeking to restrict or limit the right of appeal will be held to strict and technical exactness of practice. McKenzie v. Water Co. 6 ND 361, 71 NW 608. While the foregoing citations refer principally to the entry of judgment and notice of entry thereof we see no logical reason why the same rule should not apply to a case such as this, involving an appeal from an order of the board of directors of an irrigation district. We hold that the appeal was taken in time.

The trial court admitted in evidence all of the record presented to the board and received additional evidence consisting of the oral testimony of five of the respondents, one witness in their behalf and the oral testimony of ten witnesses testifying on behalf of appellant and also received in evidence a large number of exhibits, identified during the trial in the district court, in addition to those introduced in the proceedings before the board. Counsel for the State Water Conservation Commission contends that the reception of this additional evidence, both oral and documentary, was error and that the court exceeded its jurisdiction in so doing. He contends that (1) the board of

an irrigation district does not have jurisdiction to consider petitions for the exclusion of lands from an irrigation district where such exclusion is sought on the ground that the lands are nonirrigable from some natural cause—that lands nonirrigable from some natural cause must be excluded, if at all, by action brought originally in a court of equity; and (2) if it is held that the board has jurisdiction, then on trial de novo in the district court that court's decision must be based solely on the record made by the board and confined to a determination of whether the board acted capriciously, arbitrarily or from fraudulent or other improper motives. In short, counsel contends that the statutes do not vest the board of directors of an irrigation district with any authority whatsoever over lands that are nonirrigable from any natural cause and that the district court on appeal is not at liberty to inquire into the correctness of the board's determination as to such lands. The first of the foregoing contentions is based on decisions of the Supreme Court of Nebraska in the following cases: Andrews et al. v. Lillian Irr. Dist. 66 Neb 458, 92 NW 612; Andrews et al. v. Lillian Irr. Dist. 66 Neb 458, 97 NW 336; and Sowerwine et al. v. Central Irr. Dist. 85 Neb 687, 124 NW 118. These were all actions in equity brought to restrain the assessment and collection of taxes levied for irrigation purposes and reached the court on demurrers to the complaints. We fail to see where they are in point here. When these cases were decided the State of Nebraska did not have a statute identical with or similar to our Sec. 61–0733, supra, which provides that *any* order, act or decision of the board of an irrigation district may be taken on appeal to the district court. This statute was enacted in 1939 to implement Chap. 115 Laws of 1917 which is comprehensive legislation covering the subject of irrigation. The intention of the legislature of this state to place all matters pertaining to irrigation under the jurisdiction of the board of directors of an irrigation district in the first instance is too evident to require citation of authority. Where complete procedure is provided in legislation on a special subject it will be held to apply in the absence of some provision thereof to the contrary. In Wood v. Bangs, 1 Dak 172, 46 NW 586, where the statutes there under considera-

tion gave the board of county commissioners authority and power to erect and repair courthouses, jails and other public buildings and authorized an appeal from the decision of the board upon all matters properly before it, and where an effort was made to enjoin the board from acting the court said:

"Here is a plain statute empowering the commissioners to build a courthouse, and the same statute gives all parties aggrieved by the decision of the commissioners, the right of appeal. It seems hardly necessary to cite authorities in support of this position, that where a statute confers upon public officials authority to do one act, and then the same statute points out the remedy secured or given to all parties aggrieved, that the aggrieved party must pursue his legal or statutory remedy, and that such aggrieved party has no standing in a court of equity."

To the same effect is the case of Chester v. Einarson, 76 ND 205, 34 NW2d 418, 427 where our court said:

"Where the law provides an appeal from an order or determination of a board or commission whereby the correctness and validity of the order or decision may be reviewed the remedy so provided, if adequate, must be pursued and a party having the right of appeal may not disregard the remedy and obtain injunctive relief against the enforcement of the order or the decision." (Citing cases.) The remedy by appeal will afford adequate relief.

We find no support in the authorities for counsel's second contention. The requirement of the statute is that the issue raised by the filing of the petitions and the action of the board thereon shall be tried de novo in the district court. The district court is a court of general jurisdiction and possesses such appellate jurisdiction as may be conferred on it by law. Sec. 103, ND Const. Its jurisdiction is, as was said by this court in the case of Langer v. State, 75 ND 435, 28 NW2d 523, "all embracing. It takes in all causes". The term "de novo" has in law a well defined meaning. It means fresh; anew. Estes v. Denver & R. G. R. Co., 49 Col 378, 113 Pac 1005, 1008. A second time. Stark et al. v. Heart River Irrigation District, supra. A trial de novo may be had either on the record made in the court or tribunal below, or upon the record made in the

court in which the trial de novo is had. 3 Am. Jur 356, Sec. 815. In this state an irrigation district is a body corporate, Sec. 61–0701 NDRC 1943, and its board of directors is not an "administrative agency" within the purview of Sec. 28–3201 NDRC 1943, lacking as it does the requisite of statewide jurisdiction. Consequently the rules of appellate procedure applicable to such agencies do not apply. These provide generally that on appeal to the district court the issues shall be determined upon the record made before the agency whose order or determination is to be reviewed, with authority in the court to affirm or modify the decision or order, but if modified the court is required to remand it to the agency from which it came for disposition in accordance with the court's decision. Chap. 28–32 NDRC 1943. There are no such restrictions in the statute governing appeals in irrigation matters, but on the contrary Sec. 61–0733 specifically provides that an appeal taken pursuant to the provisions of such statute "shall be docketed as any cause pending in the district court is docketed and shall be heard and determined de novo. The district court may enter such order as the court shall deem just and proper." These provisions are in harmony with those found in Sec. 33–1116 NDRC 1943 which specify how appeals from justice court shall be tried in the district court,— "An action appealed from justice court shall be tried anew in the district court in the same manner as actions originally commenced therein." The distinction between the method of trying appeals in the district court from orders or decisions of administrative agencies and appeals from justice court was clearly pointed out by this court in the case of In re Guon, 76 ND 589, 38 NW2d 280, 283:

"Where an appeal from a justice court for a new trial in the district court is perfected and the case transferred to the district court pursuant to the prescribed appellate procedure and brought within the jurisdiction of the district court for trial, the district court becomes vested with original jurisdiction of the cause and all questions both of law and fact involved in the controversy are opened up for independent examination and determination in the district court." Citing, NDRC 1943, Sec. 33–1116; Bryan v. Miller, 73 ND 487, 16 NW2d 275; Bachelor v. Vanderbos,

60 SD 392, 244 NW 532; Bonesteel v. Gardner et al., 1 Dak 356, 46 NW 590.

The trial court concluded, and we think correctly, that under the provisions of Sec. 61–0733, supra, it might receive and consider any competent evidence, both oral and documentary, relevant and pertinent to the issue regardless of whether such evidence had been presented to and considered by the board of directors of the irrigation district.

Although expressing the view that the trial court was correct in overruling the motion to dismiss the appeal of respondents from the decision of the board because not taken in time, and, in overruling the objection to the reception of evidence other than that presented to and considered by the board, counsel for appellant irrigation district, at the request of counsel amicus curiae has assigned as error the trial court's rulings on these two objections to the end that the issues raised thereby might be presented to this court for determination.

This brings us to the merits of the case. The trial court found as a fact that all of respondents' lands retained in the district by the board were nonirrigable from natural causes and rendered judgment that they be excluded therefrom. If the premise is correct the decision is right. Both are challenged on this appeal.

Preliminary to a discussion of the issues involved a brief statement of the procedure followed may be helpful. Twenty-two owners filed with the board petitions for the exclusion of all of their lands from the district. On the hearing the board dismissed three of the petitions for lack of proof and one petitioner did not appeal from the order of the board. Of the eighteen petitioners, who are the respondents on this appeal, five were witnesses in the court below, each describing the condition of his own lands. The trial court considered the evidence of each respondent who testified separately but considered all of the evidence offered by appellant as applying to the lands of each respondent. The trial court made composite findings as to the five respondents who testified except that the lands of each were separately described and on this appeal we shall consider these five respondents as a group. The parties have

stipulated that any final determination of the petitions of the five respondents above referred to shall govern as to the remaining thirteen.

Respondents insist (1) that it is the mandatory duty of the board of directors of an irrigation district to exclude from the district all lands that from any natural cause can not be irrigated thereby and direct our attention to the concluding sentence of Sec. 61–1016 NDRC 1943 "In no case shall any land be held by a district or taxed for irrigation purposes if from any natural cause it cannot be irrigated thereby.", it being their contention that this province of the statute is mandatory and must be literally construed so as to exclude *all* nonirrigable tracts of land, however small, from the district; (2) that the exclusion of land on any other ground is discretionary with the board, but that the record in this case shows that the cost of leveling any areas that might be made irrigable by so doing is prohibitive and that the board abused the discretion vested in it by Sec. 61–1017, supra, when it retained portions of respondents' lands in the district and therefore exceeded its jurisdiction and hence the judgment of the lower court excluding such lands is correct.

Appellant admits that lands that from any natural cause can not be irrigated by the system of irrigation proposed for the district may not be retained therein or taxed for irrigation pur poses but contends that the statute is directory rather than mandatory and should receive a liberal construction to make it adaptable to the conditions prevailing here, and, that the weight of the evidence is against the findings of the court on the two questions of whether respondents' lands can not be irrigated from any natural cause, and whether the cost of leveling is so great as to make it prohibitive.

Basing their respective claims on the portion of the statute last above quoted each of the respondents herein filed with the board a written petition, in affidavit form, and duly acknowledged as required by Sec. 61–1014, supra, in which the lands of each petitioner within the exterior boundaries of the district are particularly described and wherein it is stated "That the following described lands are not irrigable in their natural state, for the following reasons, to-wit:" There then follows the statement

320

of each petitioner setting forth the particulars wherein he claims his lands are not irrigable in their natural state. With reference to lands that can be made irrigable by leveling each petition states: "That the following lands can be made irrigable, but are not irrigable in their natural state, and affiant has made inquiry as to the cost of leveling said lands and to his best knowledge, information and belief, the following lands would require the following expenditures in order to level the same for irrigation purposes:" There then follows a description by governmental sub-divisions of the land referred to as irrigable if leveled and a statement of the estimated minimum cost per acre for leveling. The reasons assigned in the several petitions why the lands described are not irrigable in their natural state and why the cost of leveling is prohibitive vary and not all of the petitions assign all of the reasons advanced in others why the lands retained in the district can not be irrigated from some natural cause. The various reasons assigned in support of the claims that the lands are not irrigable in their natural state and that the cost of leveling is prohibitive are: that the land sought to be excluded consists of hills and valleys; that it is rough and irregular in shape; that portions of it are covered with standing brush and trees; that it is subject to flooding during spring run-off and freshets; that it silts over with sand and gravel when flooded; that floods deposit on it large quantities of trees, brush, sand, gravel, rocks, foul seeds and other debris, which must be removed at great expense before the land can again be farmed; that the soil is too porous to hold water or that its character otherwise is such that it can not be benefited by irrigation. Attached to each petition are exhibits consisting of maps, plats, sketches and drawings prepared by or on behalf of each petitioner showing (1) land in the district not irrigable in its natural condition for natural causes—which designation includes all of the lands of each respondent retained in the district—(2) land that must be leveled to make it irrigable (3) land that cannot be made irrigable for one or more of the reasons stated above.

The Bureau of Reclamation, United States Department of the Interior, made a survey of all of the lands within the boundaries

of the district placing them in five classifications; Class I, II and III lands being those considered irrigable, Class V lands those which are potentially irrigable and Class VI lands those considered nonirrigable. From such survey a separate plat of the lands of each ownership was made by the Bureau showing the location, contour and area of each tract of ten acres or more containing Class I, II, III or V lands and showing the tracts of ten acres or more containing little or no irrigable acreage. Accompanying each of such plats is a typewritten schedule giving the legal description by governmental subdivisions of each tract of ten acres or more containing lands classified as irrigable and a separate schedule giving the legal description of the lands in each ownership containing little or no irrigable acreage.

The petitions, exhibits, plats and schedules heretofore referred to constituted all of the evidence presented to the board of directors of the irrigation district for its consideration in passing on the petitions for exclusion. On such evidence and any knowledge the individual members of the board had concerning the character of the lands of the several petitioners the board made its order, Exhibit 1, excluding from the district certain portions of the lands of each petitioner and retaining in the district other portions of their lands. From that part of the order retaining in the district portions of their lands the respondents herein appealed to the district court, where, on trial de novo, the order of the board was reversed, the district court rendering judgment excluding from the district all of the lands of each respondent not theretofore excluded by the board. It is from the judgment of the district court that this appeal is taken, the appellant having demanded a trial de novo in this court.

The record in this case is voluminous consisting as it does of all of the records presented to the board, which were offered and received in evidence in the court below; more than six hundred pages of typewritten testimony, and a large number of exhibits. From this record certain facts appear.

As previously noted in the court below five of the respondents were witnesses, each testifying in his own behalf. These five respondents own a total of 1480 acres of land within the

exterior boundaries of the district. The board excluded 730 acres of their lands from the district and retained therein 750 acres. Of the 750 acres retained in the district as classified by the Bureau, 377.4 are Class I, II, and III lands, 58.4 acres are Class V lands and 314.2 acres are Class VI lands. These same respondents state in their petitions that a total of 293 acres of land owned by them within the district can be made irrigable by leveling, the areas so designated by them being substantially the same areas as those classified as Class I, II, and III lands by the Bureau of Reclamation.

In designating the lands to be retained in the district the board adopted what it terms a ten-acre formula, by the application of which the land in each quarter-quarter section was subdivided into four squares of ten acres each and each ten acre tract containing a substantial amount of irrigable land was retained in the district, although such ten acre tract might also contain some Class V or nonirrigable lands. All tracts of ten acres or more containing little or no irrigable acreage were excluded from the district. No survey by metes and bounds was made to determine the area, contour and location of each tract of land classified as irrigable. The method employed to measure the irrigable acreage was by the use of planimeter, which method, as shown by the record, is accurate within five per cent, a tolerance considered permissible under standard irrigation engineering practices. The use of the ten-acre formula and the planimeter as methods of designating the irrigable areas and acreage to be retained in the district are strenuously objected to by respondents, who maintain that only by a metes and bounds survey can the irrigable areas and their extent be determined and delineated on the records for identification, assessment and other purposes.

With but few exceptions the oral testimony of the five respondents is of the same general nature. It follows closely the statements made by them in their respective petitions. Their testimony discloses that they are all experienced farmers and have lived on or farmed the lands described in their petitions for periods varying from twelve to forty years. It appears from their testimony that the Heart River Valley is subject to floods

during the spring run-off and that portions of their lands have been flooded five times since 1943, the most devastating flood being that of 1950; after each flood it is necessary to clear the land of brush, trees and other debris deposited thereon by flood waters; that the floods caused other damage, such as washing gullies in the land, silting it over with sand, gravel and rocks and infesting it with foul weeds and weed seeds; that floods would cause severe damage to irrigation canals and ditches and that some of the land is so porous that water turned into ditches would disappear into the soil of the ditch before it could spread out over any substantial crop area; that the variation in elevation of areas considered irrigable is from two to three feet on the ten acre tracts classified as Class I lands and from one to ten feet on the tracts classified as Class II and III lands; that Class V lands contain hills, knolls and hollows rendering them unsuited for irrigation; that Class VI lands are nonirrigable; that the cost of leveling the tracts considered irrigable varies from $100.00 to more than $1000.00 per acre and that such costs would in every case be prohibitive when considered with relation to the use to which the land might be put after irrigation is provided. The evidence of respondents with reference to the cost of leveling consists of mere estimates not based on experience or any factual information. None of the respondents who testified have had any experience with irrigation or with farming irrigated lands; none of them show that they are reasonably familiar with the plan of irrigation proposed for the Heart River Irrigation District. The superior knowledge of appellant's expert witnesses with reference to the character and irrigability of the lands in the district was readily admitted by one of the respondents who testified that "they (representatives of the Bureau of Reclamation) have measured every foot of that land and run over it hundreds of times. . . . *they know more about that land than I know, who has lived there for sixty-five years.*" (Italics ours.) All of the respondents who testified stated that portions of their lands retained in the district could be irrigated if leveled. Their objections to the retention of their lands in the district are that their lands are

subject to floods and that the cost of leveling to render them suitable for irrigation is prohibitive.

Appellant contends that the Class I, II and III lands are irrigable; that Class V lands are potentially irrigable and that the employment of the planimeter and the ten-acre formula adopted by the board are practical and economical methods of measurement and designation and sufficiently accurate to warrant their use in determining, locating and describing the irrigable areas within the district.

Appellant produced at the trial and offered the evidence of witnesses, all of whom were experts in their respective fields, eight of them being engineers with particular training in the field of irrigation. These eight witnesses have a combined engineering experience of more than one hundred years, a majority of it spent in irrigation engineering work. It appears from their testimony that the Heart River Valley is the type of territory that can be profitably irrigated by the system of irrigation proposed for the district, which contemplates impounding water in the Heart Butte Dam and releasing it as needed into the Heart River and the utilization of 49 pumping stations to put water on the high point of all irrigable areas within the district, from where it will flow by gravity through canals designed as a part of the whole system to the lands of each user, and from there into laterals and sublaterals and eventually to the area to be irrigated.

We briefly summarize the testimony of these experts; Joseph Mir, a witness for appellant, testified that he has been a land classifier for the Bureau of Reclamation for the past five years; that irrigable lands are those which under proper irrigation management will earn a net return to the farmer sufficient to provide a reasonable living for the farm family and repay a reasonable investment return on his investment in the land, water, and cost of crop production, and that Class I, II and III lands, as classified by him, are irrigable; that Class V lands may be placed under irrigation whenever the owner deems it advisable to do so and that Class VI lands are nonirrigable; that a field of eight acres or more is an ideal field for irrigation

and that normal leveling is a normal requirement of land that is irrigable.

Alex Persson, a witness for appellant, testified that he had more than thirty-two years experience in irrigation work on projects in the western part of this state and eastern Montana and had observed crops on 50,000 acres of irrigated lands supervised by him for the past fifteen years and the results of dry land farming in the same general vicinities during the same period. As to the economic aspect of irrigation he testified that from actual returns on irrigated lands and county averages on dry land farms the increase in yields for such period on irrigated land over dry land farming was approximately 300% for wheat, 200% for barley, oats and corn, and 100% for alfalfa. Expressed in bushels the twenty year average yield per acre of small grains, and corn, on irrigated lands in the Lower Yellowstone Project exceeded the county averages for dry land farming in Grant and Morton counties where the Heart River Irrigation District is situated in the following proportions: wheat 24.4 v. 8.9; barley 31.0 v. 13.8; oats 43.5 v. 18.4; corn 28.4 v. 14.5; alfalfa and tame hay two tons per acre on irrigated land against 1.06 tons per acre on dry land farming. He also testified that there had been no crop failure on irrigated land due to drought during such period; that he had spot checked different areas in the Heart River Irrigation District and was familiar with it; that in his opinion all of the Class I, II and III lands in the district can be irrigated profitably; that the use of a planimeter is accepted by the engineering profession as a proper method of measurement for irrigation purposes; that the metes and bounds method of measurement is not practical in describing irrigable areas.

George H. Seaworth, a witness for appellant, testified that he is a civil engineer with fifteen years experience; that he made a study of the Heart River project and is familiar with the manner in which the Bureau of Reclamation intends to irrigate the lands in the district; that the plan is to release water from the Heart Butte Dam into the Heart River and at intervals pump it up into canals and laterals which will carry the water by gravity to the irrigable areas; that the district will have

forty-nine pumping stations serving the same number of irrigable units, which range in size from 35 to 2500 acres; from a survey made it has been determined that water can be delivered to the lands in the district classified as irrigable; that he is familiar with the survey made and the results thereof; that the works and structures proposed for this project are those ordinarily built and have been tried and tested in the past; that they are routine standard structures used over and over again in irrigation works; that the plan of irrigation proposed for the district is feasible from an engineering standpoint and that in his opinion it would not be practical to establish the boundary lines of the district or to designate the irrigable areas therein by metes and bounds surveys because of the expense and that a survey by the use of a planimeter is sufficiently accurate for irrigation purposes.

D. F. Murry, a witness for appellant, testified that he was an irrigation engineer with sixteen years experience; that he made a study of the Heart River Irrigation District and is familiar with the system of land classification used there, which is standard; that in his opinion Class I, II and III lands in the district are irrigable and can be irrigated profitably; that the cost of preparing such lands for irrigation would run from $30.00 to $40.00 per acre; that some tracts might run as high as $70.00 per acre and that in his opinion it is impractical to designate the irrigable areas within the district by metes and bounds surveys because of the large amount of engineering and legal work involved but that it is practical to designate such areas by the use of a planimeter and by legal descriptions of governmental subdivision.

Another witness for appellant, William Maxey, testified that since 1940 he has been employed by the Bureau of Reclamation and during the latter portion of that time has managed the Mandan Development Farm in the Heart River Irrigation District; that it contains 71.5 acres of irrigable lands in three tracts and that the cost of the original leveling of that area was $48.69 per acre; that the cost of repairing flood damage following the 1950 flood was $24.71 per acre on trace number 1; that the cost of repairing the 1949 flood damage on the same tract was

$2.54 per acre and there was no flood damage in either year to tracts 2 and 3. He also testified that the net value of the crops raised in 1949 was $19.33 per acre after suffering a 70% loss by hail on 11.8 acres of barley and that included in the cost of producing the crop was $21.00 per acre for supervision by the Bureau of Reclamation, which would not be an expense to a farmer managing his own land, and that if these two items are taken into consideration the net income per acre for 1949 would have been $48.67.

The testimony of other witnesses for appellant is corroborative of the evidence summarized above. We do not believe that any further resumé of the evidence of the several witnesses who testified either for or against the exclusion of lands would serve any useful purpose. There is no question but what the several respondents who testified are sincere in their views as to the economic consequences the furtherance of this irrigation project will have as to them. However, the situation with reference to the eighteen respondents who seek to have their lands excluded from the district is not materially different from the situation with respect to the lands of the other one hundred five ownerships therein. While this is not a case of majority rule, it does, nevertheless, impress us that where out of one hundred twenty-five ownerships only eighteen have seen fit to question the economic advisability of carrying this irrigation project to its normal fruition we should be cautious in reaching a conclusion that might frustrate the desires of a vast majority of the persons owning land in and interested in the development of the Heart River Irrigation District.

The controversy in this case is not whether nonirrigable lands may be retained in an irrigation district, but whether the method here employed to measure and designate the irrigable areas in the district is permissible. The trial court adopted the view that under no circumstances could any nonirrigable land be retained in an irrigation district and that it was and is the mandatory duty of the board to exclude all lands which from any natural cause cannot be irrigated by the system of irrigation proposed, and, further held that the irrigable areas of each ownership within the district must be determined by a metes and

bounds survey; that the use of the ten-acre formula adopted by the board in the instant case is violative of the statute, because by its use nonirrigable portions of certain ten acre tracts containing irrigable land are retained in the district.

In this case we are required to determine the facts anew on the record made in the court below, a trial de novo having been demanded. "The supreme court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, . . . ." Sec. 28–2732 NDRC 1943. Although under this statute we are required to find the facts independently of the trial court's findings, such findings are entitled to appreciable weight. The weight to be accorded the findings of the trial court in a case tried de novo in the supreme court is fully stated in the case of Belt v. Belt, 75 ND 723, 32 NW2d 674:

"On such appeal, however, the Supreme Court has the power and it is made its duty to review and weigh the evidence that was adduced upon the trial and transmitted to the Supreme Court as a part of the record on appeal, and to 'find the facts for itself' (Doyle v. Doyle, 52 ND 380, 389, 202 NW 860, 863), 'independently of the trial court's findings.' Merchants Nat. Bank v. Collard, 33 ND at p 565, 157 NW at p 491.

"While on such appeal the findings of the trial court are not accompanied by the strong presumptions of regularity and correctness applicable in cases where 'a trial anew' of questions of fact may not be had, and while this Court is required to weigh the evidence and find the facts 'independently of the trial court's findings', nevertheless in weighing the evidence and finding the facts the findings of the trial court must still have weight and influence with this Court 'especially when based upon the testimony of witnesses who appeared in person before that court.' Christianson v. Farmers' Warehouse Asso. 5 ND 438, 444, 67 NW 300, 302, 32 LRA 730, 732."

Neither the veracity nor credibility of any witness testifying in this case is challenged by either side, but the weight to be given their testimony depends to a great extent on the qualification each witness has shown he possesses regarding the matters about which he testifies; which in this case are (1) whether cer-

tain lands are nonirrigable from any natural cause and (2) whether the cost of leveling such lands to render them irrigable is prohibitive. The only qualifications claimed for the respondents who testified are that they are experienced farmers and the owners of the lands about which they testified. They were competent to describe the physical facts or conditions evident and apparent on their lands. 32 CJS 117, Sec. 471. An owner of property may testify without qualification other than the fact of ownership as to its value. Watson v. Nelson, 42 ND 102, 172 NW 823; 32 CJS 288, Sec. 545. The mere fact of ownership does not, however, qualify a person as an expert witness on other matters. When an owner offers himself as an expert witness, on matters other than the value of his property, he becomes subject to the same rules as any nonexpert witness giving opinion evidence and, being a nonexpert, must give the facts upon which his opinion is based. Auld v. Cathro, 20 ND 461, 128 NW 1025, 32 LRA (NS) 71; 58 Am Jur 469, Sec. 837. Whenever an issue involves a certain state of facts, a proper understanding of which requires knowledge or experience beyond that gained in the ordinary affairs of life, resort must be had to expert testimony in order to arrive at an intelligent conclusion. Peddicord v. Lieser, 5 Wash2d 190, 105 Pac2d 5. See also Jordan v. Skinner, 187 Wash 617, 60 Pac2d 697; Hurst v. Reeder, 86 Ind App 294, 157 NE 101. The rule is thus stated in 20 Am Jur 1057, Sec. 1206:

"The opinion of the expert may not be arbitrarily rejected; it is to be considered by the jury (or the trier of the facts) in view of all the facts and circumstances in the case and of the common knowledge and experience of mankind; and when common knowledge utterly fails, the expert opinion may be given controlling effect."

The same authority in a further discussion of the rules states:

"There are cases holding that in some circumstances expert testimony is of great value, or that it has a weight approximating that of conclusiveness. Thus, testimony of an expert witness on a subject calling for expert opinion is conclusive to the extent that it may not be contradicted by the testimony of a nonexpert witness. . . . Similarly, the view is stated that the testimony of experts becomes more than mere opinion where it

consists of facts revealed by the use of mechanical instruments and where it is scientifically established to the degree of actual demonstration." 20 Am Jur 1061, Sec. 1208.

The weight to be given to the testimony of both expert and nonexpert witnesses is, however, a matter to be determined by the trier of the facts. In Klundt v. Pfeifle, 77 ND 132, 41 NW2d 416, this court said:

"The weight to be given to the opinions of a witness testifying as an expert is always a matter to be determined by the trier of the facts from all the circumstances appearing in evidence. The trier of facts must reconcile, if possible, any apparent conflict, whether developed upon the whole case or in the testimony of an individual witness, and give effect to all of the evidence, when the nature of the case will admit of such disposition, or if conflict is irreconcilable must affix his own value to the contradictory evidence."

Whether land is irrigable is a question of fact. Fallbrook Irrigation District v. Bradley, 164 US 112, 17 S Ct 56, 41 L Ed 369. Whether the lands of these respondents retained in the district cannot, from some natural cause be irrigated by the system proposed, is a question this court must determine from the record before it. Respondents nowhere state that the lands they are seeking to have excluded from the district cannot from any natural cause be irrigated by the system of irrigation proposed for the district. The averment in their petitions (all of them being identical in this respect) is that "The following described lands *are not irrigable in their natural state.*" (Italics ours.) There is no requirement anywhere in the statute that lands included in an irrigation district must be excluded therefrom unless they are irrigable in their natural state. The statute merely provides that in no case shall land be held in the district or assessed for irrigation purposes *if from any natural cause it cannot be irrigated thereby.* If only lands needing no leveling and irrigable in their natural state may be retained in an irrigation district we venture to say that very few areas anywhere in the country could qualify for organization as irrigation districts.

. The trial court found as facts that respondents' Class I, II

and III lands are so sandy and porous they will not hold water; would be unfertile and unproductive in spite of irrigation; are subject to floods each year which erode the soil and that such tracts as might be irrigated by leveling are so small as to be negligible, and concluded as a matter of law that all of respondents' lands retained in the district be excluded therefrom because nonirrigable from natural causes. As pointed out above the five respondents who testified stated that of the 750 acres of their lands retained in the district 293 acres were irrigable if leveled. This is by no means a negligible quantity of irrigable land. Appellant's witnesses say that the Class I, II and III lands of these respondents retained in the district,—all of which they claim are irrigable,—aggregate 377.4 acres. The areas considered irrigable if leveled and the Class I, II and III lands are outlined on separate plats of the respondents and the Bureau of Reclamation, all in evidence as exhibits in the case. A comparison of the two sets of plats discloses that the parties are in substantial agreement as to the location of areas considered irrigable, although differing somewhat as to the extent of such areas. Where, as here, the landowners have stated in their petitions for exclusion that certain areas of their lands are irrigable if leveled and have designated such areas and have confirmed the averments in their petitions by their oral evidence on the trial, and where the record discloses that normal leveling is a normal requirement in an irrigation project and a large number of competent and experienced experts, who are familiar with the precise area involved have given it as their opinion that the Class I, II and III lands in the district are irrigable and can be irrigated profitably by the system of irrigation proposed, we are not prepared to say that Class I, II and III lands are nonirrigable from any natural cause and, therefore, must be excluded from the district under the provision in Sec. 61–1016, heretofore quoted.

Respondents insist, however, that even if Class I, II and III lands are held to be irrigable they should be excluded from the district because the cost of leveling to render them suitable for irrigation is so great that if attempted it would result in the confiscation of their lands and that, hence, the board abused

the discretion vested in it by Sec. 61–1017, supra, and exceeded its jurisdiction in retaining any part of their lands in the district, and the lower court so held. The trial court made no finding with respect to the cost of leveling respondents' lands, the finding being merely that some small tracts of land of a few acres each probably could be irrigated if leveled, but that the amount is so negligible they could not be economically irrigated. We are satisfied from an examination of the whole record that Class I, II and III lands are irrigable and that the cost of leveling is not so high as to make it economically unsound or prohibitive.

Having reached the conclusion that Class I, II and III lands are irrigable and that the cost of leveling is not prohibitive, the question then arises whether the irrigable areas may be located and measured by the use of a planimeter and whether they may be described by legal descriptions of governmental subdivisions. Nowhere in the statute is there any provision that lands sought to be excluded from an irrigation district must be described by metes and bounds. Sec. 61–1014, supra, referring to the manner of describing lands in petitions for exclusion provides: "The description of such lands need not be more particular nor certain than is required when the lands are entered in the assessment book by the township assessor." The unit of assessment in rural areas in this state is the quarter section or a legal subdivision thereof. "In all assessment books and tax lists and in all proceedings for the collection of taxes and proceedings founded thereon, land not situated within the limits of an incorporated city or village shall be described in subdivisions not exceeding quarter sections. . . ." Sec. 57–0238 NDRC 1943. The thought that the legal description of a governmental subdivision or fraction thereof should be used in designating lands in an irrigation district runs through the entire irrigation code of this state. (Chap. 115 Laws of 1917, being Title 61 NDRC 1943) Sec. 61–0502 NDRC 1943 fixes the minimum area of a proposed district at eighty acres; Sec. 61–0503 NDRC 1943 determines the right to vote on a forty acre basis; Sec. 61–0901 NDRC 1943 requires the district assessor to examine each tract or *legal subdivision* of land in the district; Sec. 61–1002

NDRC 1943 providing for the *inclusion* of land in an irrigation district provides that the description of such lands need not be more particular than may be required when such lands are entered by the township assessor in the assessment book; Sec. 61–0915 1949 Supp to NDRC 1943, provides that all assessments made pursuant to said chapter and the enforcement thereof shall be in like manner and to the same effect as general state and county taxes are spread and assessed against real property, thereby rendering the provisions of Sec. 57–0238 applicable.

In an exhaustive memorandum decision, adopted by respondents as their brief on this appeal, the trial court because of the similarity of language in the Nebraska statute with that in the irrigation law in this state, concluded that the decisions of the Nebraska court rendered prior to the adoption of Chap. 115, SLND 1917, are controlling here and construed the Nebraska decisions to mean that land retained in an irrigation district must be described by a metes and bounds survey and that any land—no matter how small the area—nonirrigable from some natural cause must on proper proceedings therefor be excluded from the district. The trial court's conclusion is based on the last sentence in Sec. 61–1016 NDRC 1943, which was part of Sec. 50 Chap. 115 SLND 1917, which is identical with a part of Sec. 49, Chap. 70, Laws of Nebraska, 1895. The sentence in both statutes is: "In no case shall any land be held by a district or taxed for irrigation purposes if from any natural cause it cannot be irrigated thereby." The Nebraska cases so construed by the trial court are Andrews v. Lillian Irr. Dist. 66 Neb 458, 97 NW 336; Baker v. Central Irrigation District, 93 Neb 460, 140 NW 765; State v. Several Parcels of Land, 80 Neb 424, 114 NW 283; Wight v. McGuigan, 94 Neb 358, 143 NW 232; and Birdwood Irrigation District v. Brodbeck, 148 Neb 824, 29 NW2d 621. In Baker v. Central Irrigation District, supra, the question before the court was whether the boundary of an irrigation district that was described by metes and bounds was so indefinite and uncertain that it could not be determined how much of the plaintiff's land was within the district. The court held that in that case the description was too indefinite but laid down the rule that a description by metes and bounds which would be sufficient in

an ordinary deed would be sufficient under the irrigation statute. The first of the Nebraska cases, Andrews v. Lillian Irrigation Co., supra, decided on rehearing, contains this statement: "Whether a particular *tract* of land from some natural cause can not be irrigated, is a question which goes to the jurisdiction of the county board over such *tract* and may be raised at any time in a proper case, because section 49, supra, expressly denies the jurisdiction of the county board to include such land in an irrigation district, or to tax it for irrigation purposes." (Italics ours.) This quotation is repeated in State v. Several Parcels of Land, supra, and Sowerwine v. Central Irrigation District, supra. It will be noted that in all of these cases the court was dealing with *tracts* of land precisely as was done by the board in the case now under consideration. In Wight v. McGuigan, supra, the Nebraska court said:

"Defendants assume that any considerable piece of land, as a high, sandy ridge running through a tract, must be exempted from taxation, and the assessor seems to have so regarded it. The assessment roll for some years names seven forties (280 acres) as a tract of land to be assessed, and the tract is assessed as containing a much less number of acres. The men who made the assessment testify that these figures represent the estimated number of acres on which the water could be put. This is not the meaning of the decision in Andrews v. Lillian Irrigation District, 66 Neb 461, 92 NW 612, 97 NW 336. *If the tract is such as can be watered, the fact that there may be a knoll or slough thereon will not exempt the tract.* It is for the board to determine in the first instance whether the tract is so capable as that irrigation would be beneficial to the tract considered in its entirety, and the decision of the board will not be reviewed unless it clearly appears that the tract is such as would not be benefited."

"The owner of a specific tract of land ought not to be compelled to join an irrigation district and pay taxes for the support thereof if his land *as a whole* is so situated that for natural causes it cannot be irrigated. *But such a farm cannot be said to be incapable of irrigation because there happens to be a knoll or ridge thereon, comparatively a small part of the farm, that can-*

*not be watered.*  Such knolls and ridges should be taken into consideration in determining the benefits to the land as a whole by the irrigation works, and also in determining the value of the land for assessment, and so will reduce the assessment." (Italics ours.)

And in the same case made this further very significant statement: "If a government subdivision of land, *or a tract otherwise capable of identification and definite description,* is incapable of irrigation, and so situated with reference to the proposed district and other lands therein as to make such a course practicable, such tract might be omitted from the district, although it formed a part of a larger tract of the same owner." (Italics ours.)

The foregoing is in harmony with the decisions of other states. Under the California statute the basis for excluding land from an irrigation district is whether such land will be benefited by irrigation.  The California Statute, Statutes of California, 1887, Sec. 2, p 30 (Wright Act) provides "nor shall any lands which will not, in the judgment of the said Board, be benefited by irrigation by said system be included within such district;" This provision of the California statute has been construed by the courts of that state in a number of cases:  Board of Directors of Modesto Irrigation District v. Tregon, 88 Cal 334, 28 Pac 237. In the course of its decision in that case the court said: "It is nowhere contended by the appellant that in organizing irrigation districts it is the duty of the suprvisors to exclude by demarcation every minute tract or parcel of land that happens to be covered by a building or other structure which unfits it for cultivation, and certainly the law could not be so construed without disregarding many of its express provisions and at the same time rendering it practically inoperative."  Again in the case of J. & W. C. Shull, Inc. v. Merced Irr. Dist. et al. 90 Cal App 270, 265 Pac 965, 966, in refusing to exclude 325 acres which admittedly could not be benefited by irrigation out of a 1,260-acre tract the court said:

"As we have hereinbefore stated, certain irregular portions thereof lie above the water-level of the proposed canal. *These particular tracts are not designated by any of the ordinary legal*

*subdivisions of land,* but are scattered about over the entire tract, and it is upon this testimony it is claimed that 325 acres of said 1,260-acre tract should be excluded. Under such circumstances we do not very well see how it is incumbent upon the board of directors of the irrigation district to exclude, by demarcation or any other method, such irregular tracts, even if it be assumed that such irregular tracts, by reason of their elevation to the canal level, were not subject to irrigation by gravity." (Italics ours.)

In Hand v. El Dorado Irr. Dist. 97 Cal App 740, 276 Pac 137, the District Court of Appeal, Third Circuit, affirmed the judgment of the Superior Court denying a petition to exclude 517 acres of land from the El Dorado Irrigation District on the ground that the tract would not be benefited by the proposed irrigation system. It was contended by the respondents that 287 acres, which was more than one-half of the tract, was nonirrigable because of being above the highest available water supply of the irrigation district. In the course of its opinion the court said:

"Section 78 of the California Irrigation Act specifically provides that upon a proper showing the board may exclude 'the lands, or some portion thereof mentioned in the petition.' Again, it is provided in that section that the board under such circumstances 'shall (exclude) the lands mentioned and described in the petition, or some *defined* portion thereof.' This language infers, and reason prompts the conclusion, that if a substantial proportion of the tract sought to be excluded is properly included in the district, the entire tract must be included unless the portion which is not benefited can be reasonably defined and segregated from the tract." Schull v. Merced Irrigation District, supra, is then cited as controlling.

It should be here noted that the California statute, as does ours, speaks of the exclusion of "lands." The court applies the statute to tracts of land and places upon the applicants for exclusion, the burden of establishing what tracts of land are to be excluded. See also In re Reno Press Brick Co. 58 Nev 164, 73 Pac2d 503.

The board of directors of the district were confronted with

the very real and practical problem of formulating a rule or method for determining the boundaries of the district. The statute does not state how boundaries shall be defined. The respondents contend that metes and bounds is the only method that can be tolerated. But by metes and bounds it is impossible to include within the district literally all land that is irrigable and exclude all that is nonirrigable unless the boundary be a meandering one that would include all depressions and exclude all high land. Such a boundary would present great practical difficulties of survey and definition. It would in many instances burden the public records with interminable and impracticable descriptions and would complicate the computation of assessments. A much more simple alternative is to include or exclude lands from the district according to legal subdivisions or definable and determinable portions thereof.

In the case before us the land to be included in or excluded from the district was determined upon the basis of fractions of a legal subdivision "or a tract otherwise capable of identification and definite description"—namely, ten-acre tracts which are capable of both identification and description. These ten acre tracts are included or excluded regardless of the fact that they may be and properly are a part of a larger tract of the same owner. The cases proceeded on the theory that in determining what land is to be excluded and what land is to be retained in an irrigation district the farm as a whole is to be considered. It will be noted that the board in passing upon the petitions of the respondents herein retained in the district slightly more than one-half of the lands of each petitioner. Whether a tract is irrigable must, in the first instance, be determined by the board of directors as a question of fact. The statute in question should be given a reasonable construction to make it adaptable to the conditions prevailing here. The rule adopted by the board in this case is certainly a reasonable one, reducing as it has the government subdivisions to ten acre tracts which are both describable and definable and capable of identification. Where land has been reduced to describable and definable rectangular tracts of ten acres each the established irrigability of a sub-

stantial portion of a tract makes the entire tract an irrigable tract within the contemplation of our statute and it may be lawfully included or retained in the district.

· The statute provides that in no case "shall any land" be held in an irrigation district, etc. The word "any" is a general word and may have a diversity of meanings. Its meaning in any particular case depends largely upon the context and subject matter of the statute or instrument in which it is used. Catholic Order of Foresters v. State, 67 ND 228, 271 NW 670, 109 ALR 979; 3 CJS 1398. The words "any lands" were held not to mean "all lands" in the case of Drainage District, etc. v. Bates County, Mo. 216 SW 949, 953. The word "shall" may be construed as "may". 59 CJ., Sec. 635, page 1085; Sec. 636, page 1087.

· The statute in question is a portion of the irrigation code of this state, which has for its object the redemption of arid or semi-arid tracts by irrigation. It is a matter of common knowledge that large areas in the western portion of this state are periodically subject to extreme drought and it is equally well known that there are thousands of acres of land that can be made highly productive by irrigation and that the means for irrigating them are readily at hand. The project involved in this litigation represents but a small part of the potentially irrigable areas in the state. These areas are found principally on the benchlands of streams, where each irrigable area though it may not be large the aggregate of such areas is considerable. After a careful consideration of the entire record in the case we reach the conclusion that the legislature meant to confer on the Board of Directors of an irrigation district the right to determine, in the first instance, which tracts of land within the district are nonirrigable from some natural cause and when such determination has been made then to exclude such tracts from the district.

No question is raised here as to the legality of the organization of this irrigation district. It was organized pursuant to a proper petition filed with the state engineer who made his findings and order establishing the district, which order was approved by the affirmative vote of a substantial majority of

the persons entitled to vote thereon, all as provided by Chap. 61–05 NDRC 1943. The state engineer found the project practicable from an engineering standpoint and economically sound. This court has recently held that the inclusion of nonirrigable lands within the exterior boundaries of an irrigation district, when organized, does not because of such inclusion, render such organization void or invalid. In the Matter of the Confirmation of Contract Between Fort Clark Irrigation District of Mercer and Oliver County, North Dakota and the United States, 78 ND 107, 48 NW2d 741.

The record discloses that the district contemplates entering into a contract with the United States for the construction of the irrigation system proposed and its subsequent maintenance, and that to accomplish its purpose it will be necessary for the district to levy assessments against the lands retained in the district to defray the costs of such construction and maintenance. Respondents insist that such assessments may not be legally levied against any but irrigable land, and that the retention of any nonirrigable land in any ten-acre tract would result in the assessment for irrigation purposes of land which the statute says may not be retained in the district or assessed for irrigation purposes, and hence the assessment of such nonirrigable portions of any ten-acre tract would violate the due process clause of the Federal Constitution. This contention has been disposed of by what has already been said.

It appears from the record that a portion of the lands of one of the respondents was destroyed and washed away by a flood. The parties have stipulated that the land so destroyed may be excluded from the district.

It further appears that certain nonirrigable lands not constituting portions of ten-acre tracts containing irrigable lands were retained in the district because necessary for right-of-way or sites for the installation of irrigation works and equipment. Sec. 61–0716 NDRC, Sub. 3, provides that the board of an irrigation district may, where necessary, exercise the right of eminent domain. The fact that the district may need right-of-ways and sites for drains and irrigation structures affords no justification for denying a petition for the exclusion of nonirrigable tracts.

Where the acquisition of such lands is necessary the district must acquire them in the manner provided by the statute.

The judgment of the district court is modified and the case remanded with directions to exclude from the district the lands of respondent Rask stipulated to be excluded therefrom and to enter judgment retaining in the district all Class I, II and III lands and such portions of Class V and VI lands as constitute ten-acre tracts containing substantial irrigable acreage as established by the order of the board, exhibit 1.

MORRIS, C.J., BURKE and GRIMSON, JJ., and THOM, JR., Dist. J., concur.

CHRISTIANSON and SATHRE, JJ., being disqualified, did not participate, Hon. Harold B. Nelson, Judge of Second Judicial Dist. and Hon. Geo. Thom, Jr., Judge of the Fourth Judicial Dist., sitting in their stead.

On Petition for Rehearing

NELSON, District Judge. Respondents have filed a petition for rehearing based on several grounds the first of which is their claim that the Court expressed an opinion on a matter not before it in referring to the organization of the irrigation district involved and, in fact, decided that the district had been legally organized. The question of the legality of the organization of the district was not raised by the pleadings nor referred to in the briefs or oral argument. We, therefore, assumed for the purposes of this action at least that the legality of the organization of the district was admitted. While reference was made in the opinion to the evidence of the proceedings for the establishment of the district, no opinion was expressed as to whether the district had in fact been legally organized. The other grounds urged as a basis for rehearing were all fully argued and considered in the original opinion to which we adhere.

Rehearing denied.

MORRIS, C.J., GRIMSON and BURKE, JJ., and THOM, JR., District Judge, concur.